# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00385-SCT

*REGINA WRIGHT*

*v.*

*GEORGE QUESNEL, M.D., AND*
*SOUTH PANOLA COMMUNITY HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/28/2002 |
| TRIAL JUDGE: | HON. ANN H. LAMAR |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM C. WALKER, JR. |
| ATTORNEYS FOR APPELLEES: | SHELBY KIRK MILAM |
| | S. DUKE GOZA |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 07/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Regina Wright filed suit against George Quesnel, M. D., and South Panola Community Hospital

for the death of her unborn child, alleging that Dr. Quesnel failed to make proper diagnoses and order

proper treatment and that SPCH was also liable due to respondeat superior. The circuit court granted Dr.

Quesnel and SPCH's a motion for summary judgment based on immunity under the Mississippi Tort Claims

Act (MTCA). Miss. Code Ann. §§ 11-46-1 - 23 (Rev. 2002). We affirm.

## FACTS

¶2.　　　Dr. Quesnel was the exclusive provider of obstetric and gynecological services at SPCH, a public hospital which is a "governmental entity" under the MTCA.  Dr. Quesnel was Wright's obstetrician and treated Wright from her first trimester of pregnancy forward. Eight months into her pregnancy, Wright presented to  Dr. Quesnel with high blood pressure and possible pre-eclampsia.[1]  Dr. Quesnel did not hospitalize Wright but sent her home for bed rest.  Wright saw Dr. Quesnel again three days later, and was again ordered to bed rest. Three days later, Wright again saw Dr. Quesnel, this time with severe pain that began early that morning at home.  Dr. Quesnel determined that the fetus had died in her womb.

¶3.　　　After motions for summary judgments were filed, the circuit court ruled that, based on the employment contract between Dr. Quesnel and SPCH, and on the fact that Dr. Quesnel received compensation only from SPCH, Dr. Quesnel was a full-time SPCH employee and was shielded from liability under the MTCA.[2]  Wright appeals.

### STANDARD OF REVIEW

¶4.　　　We review summary judgment rulings de novo.  *Miller v. Meeks*, 762 So. 2d 302 (Miss. 2000).  A summary judgment motion is properly granted when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Id.* at 304; Miss. R. Civ. P. 56(c).  The moving party has the burden of demonstrating that no genuine issues of material fact exist.  The trial court must review all evidentiary matters before it in the light most favorable to the non-moving party.  *Id*.  Where one

---

[1]According to the American College of Obstetrics and Gynecology, preeclampsia, a treatable condition, is characterized by high blood pressure, fluid retention and protein in the urine.  Since preeclampsia can severely restrict the flow of blood to the placenta, it can be quite dangerous for a developing baby. If it's not treated it can develop into eclampsia, a serious condition that can cause convulsions. Eclampsia can be very dangerous for a mother and her unborn child.

[2]Wright did not contest the fact that SPCH is a community hospital and therefore a political subdivision of the State of Mississippi.  As such, its liability is clearly governed by the MTCA.

party swears to one version of the matter at issue, and the other another version, issues of fact can be present sufficient to bar summary judgment. *Id*. (citing *American Legion Ladnier Post No. 42, Inc. v. City of Ocean Springs*, 562 So. 2d 103, 106 (Miss. 1990)). As we have stated,

> An issue of fact may be present where there is more than one reasonable interpretation of undisputed testimony, where materially different but reasonable inferences may be drawn from uncontradicted evidentiary facts, or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.

*Id*. at 305 (citing *Dennis v. Searle*, 457 So. 2d 941, 944 (Miss. 1984)). Indeed, where we find triable issues, we must reverse a summary judgment.

## DISCUSSION

I.     **WHETHER DR. QUESNEL WAS AN EMPLOYEE OF SPCH AT ALL TIMES PERTINENT TO THE COMPLAINT, THUS AFFORDING HIM IMMUNITY UNDER THE MTCA.**

¶5.     The circuit court found that at the time of the alleged negligence, Dr. Quesnel was an employee of the state of Mississippi under Miss. Code Ann. § 11-46-5 (Rev. 2002). Wright contends that, despite SPCH's employment contract with Dr. Quesnel in which he is defined as an SPCH employee, SPCH held itself out to the public via its "Conditions of Admission Form" as *not* being Dr. Quesnel's employer. Due to the conflict between the form and the contract, she argues an issue of fact exists as to Dr. Quesnel's employment status.

¶6.     We find that the circuit court correctly decided that Dr. Quesnel was an employee of SPCH at the time of the alleged negligence. In its answer, SPCH admitted that Dr. Quesnel was its employee during all times pertinent to the allegations of the complaint. A third party such as Wright cannot say that the legal effect of a contract between two other parties (SPCH and Dr. Quesnel) is different from that intended by

3

the two other parties unless the third party can show that the contract was made for his or her benefit. *Burns v. Washington Savs.*, 251 Miss. 789, 171 So. 2d 322, 324 (1965). Here, the benefits of the employment contract flow to SPCH and Dr. Quesnel only, *not* to Wright. No material issue of fact exists.

¶7.     Also, in determining whether a physician is a state employee, we have looked past *form* (titles, *Conley v. Warren*, 797 So. 2d 881 (Miss. 2001), malpractice insurance, *Knight v. McKee*, 781 So. 2d 123 (Miss. 2001), practice plans, *Mozingo v. Scharf*, 828 So. 2d 1246 (Miss. 2002), etc., to the *substance* of the physician's relationship with the state hospital. The factors we consider are the physician's acts, the state hospital's interest in the physician's acts, the state hospital's control over the physician's acts, whether the physician's acts involved judgment and discretion, and whether the physician received compensation from the patient. *See Miller v. Meeks*, 762 So. 2d 302, 310 (Miss. 2002). The *Miller* factors are more than sufficient to determine the status of physicians working for state hospitals, and that SPCH's disclaimer of liability for Dr. Quesnel's acts does not change the legal status of Dr. Quesnel, especially when SPCH has admitted that Dr. Quesnel was its employee.

## II.     WHETHER WRIGHT COMPLIED WITH THE NOTICE PROVISIONS OF THE MTCA.

¶8.     Under the MTCA,

> After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity.

Miss. Code Ann. § 11-46-11(1) (Rev. 2002). Plaintiffs must substantially comply with the notice provisions. *See Carr v. Town of Shubuta*, 733 So. 2d 261 (Miss. 1999); *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237 (Miss. 1998). While a plaintiff need only substantially comply with the MTCA

4

notice statute, "we can hardly afford relief under the [MTCA] when there is **no effort** to comply with the procedural mandates." *Little v. Miss. Dep't of Human Servs.*, 835 So. 2d 9, 12-13 (Miss. 2002) (emphasis added). That is, "[t]hough substantial compliance with the notice provisions is sufficient, 'substantial compliance is not the same as, nor a substitute for, non-compliance.'" *Gale v. Thomas,* 759 So. 2d 1150, 1158 (Miss. 1999) (quoting *Carr v. Town of Shubuta*, 733 So. 2d 261, 265 (Miss. 1999)).

¶9.     Wright's child died on August 26, 1999. She filed her notice of claim with SPCH on May 24, 2001. She filed her complaint against SPCH on June 4, 2001, eleven days after filing her notice of claim. SCPH argued in its motion for summary judgment that Wright failed to comply with the MTCA notice provisions. The circuit court determined that Wright had failed to comply with those provisions. It is clear that, although strict compliance with the MTCA notice provisions is no longer required, a complete failure to comply is not the same as substantial compliance. Wright filed a notice of claim but did not wait the statutorily-prescribed ninety day period before filing suit. Allowing a plaintiff to file suit before ninety days have passed since noticing the claim is tantamount to reading out the notice provisions of the MTCA. Gross disregard for the notice provisions is not considered substantial compliance.

¶10.     The MTCA provides for a one-year statute of limitations. Miss. Code Ann. § 11-46-11 (Rev. 2002). That statute of limitations is, however, subject to a discovery rule. *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1000 (Miss. 2004). The discovery rule tolls the statute of limitations "'until a plaintiff should have reasonably known of some negligent conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally negligent" *Id.* at 1000-01 (quoting *Moore ex. rel. Moore v. Mem'l Hosp. of Gulfport*, 825 So. 2d 658, 667 (Miss. 2002)). But to benefit from the discovery rule, a plaintiff must be reasonably diligent in investigating her injuries. *Wayne Gen. Hosp.*, 868 So. 2d at

5

1001. We have recognized that "[t]he focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury." *Id.* (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)).

¶11. In *Wayne General*, Wa'Landra Hayes was admitted for observation at Wayne General Hospital, a community hospital for purposes of the MTCA. 868 So. 2d at 999, 1003-04. Wa'Landra was subsequently transferred to the University of Mississippi Medical Center for treatment. *Id.* at 999. The UMMC doctors determined that Wa'Landra needed a peritoneal dialysis catheter and performed the procedure. *Id.* Her bowels were perforated, which resulted in peritonitis, and a serious infection developed in Wa'Landra's bloodstream. *Id.* Wa'Landra's death certificate listed sepsis as a cause of death. *Id.* Wanda Hayes subsequently met a former employee of Wayne General Hosptial who allegedly witnessed negligent treatment of Wa'Landra while at the hospital. *Id.* As a result of this "chance meeting," Wanda filed suit. *Id.*

¶12. We concluded that the plaintiffs in *Wayne General*, at the time of Wa'Landra's death, "had enough information such that they knew or reasonably should have known that some negligent conduct had occurred, even if they did not know with certainty that the conduct was negligent as a matter of law." *Id.* at 1001. Because the death certificate listed sepsis as a cause of death, we concluded that it should have been apparent to the plaintiffs that some negligent conduct had occurred. *Id.*

¶13. In addition, we held that the discovery rule did not apply in *Wayne General* because the plaintiffs were not reasonably diligent in investigating the cause of Wa'Landra's injuries. *Id.* Hayes filed suit only after a chance meeting with a former employee of Wayne General Hospital. *Id.* Hayes did not perform or initiate any kind of investigation as to Wa'Landra's treatment. *Id.* We noted that "[t]he intent of the

6

discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them." *Id.*

¶14.    Here, the record indicates that Dr. Quesnel ordered "bed rest" after Wright's first visit. After the second visit, Dr. Quesnel told her that everything was fine and did not order any type of treatment. At the third visit, Wright complained of severe pain which started early that morning. Tragically, her child had died in the womb. Wright, like the plaintiff in *Wayne General*, had enough information at the time of the death such that she knew or reasonably should have known that negligence had occurred. She had been to see Dr. Quesnel twice and received no treatment but an order to rest - her symptoms and discomfort continued, however. When she discovered that her child had died in the womb, Wright should have known that there was some causal connection between the death and Dr. Quesnel's treatment.

¶15.    Moreover, even if Wright did not recognize the causal connection at the time of death, there is absolutely no indication that Wright made any attempts to determine the cause of her child's death until after one year had elapsed. As the circuit court noted, Wright did not offer any evidence that she could not have discovered the injury within the applicable statute of limitations. Wright did not even seek counsel until one year after the death, at which time her lawyer's medical expert determined that Dr. Quesnel committed malpractice. Thus, pursuant to our recent holding in *Wayne General*, we find that there is no issue of fact with respect to whether the discovery rule tolled the statute of limitations; accordingly, SPCH was entitled to summary judgment.

**CONCLUSION**

¶16.    Because no material issue of fact exists as to whether Dr. Quesnel was a state employee or as to whether South Panola Community Hospital was a governmental entity under the MTCA, and because

7

Wright did not comply with the notice provisions of the MTCA, we affirm the circuit court's entry of summary judgment in favor of Dr. Quesnel and South Panola Community Hospital.

¶17.    **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ AND CARLSON, JJ., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

¶18.    I disagree with the majority's holding that there was no issue of material fact as to whether Dr. Quesnel was an employee of SPCH at the time of the alleged negligence. Additionally, I cannot agree with the majority's finding that Regina Wright was not reasonably diligent in discovering the cause of her child's death. It is clear that there are material issues of fact that exists as to these two arguments. Therefore, I respectfully dissent.

¶19.    Wright contends that despite its employment contract with Dr. Quesnel in which he is defined as an SPCH employee, SPCH held itself out to the public via its "Conditions of Admission Form" as *not* being Dr. Quesnel's employer. Due to the conflict between the form and the contract, she argues an issue of fact exists as to Dr. Quesnel's employment status. Wright also contends that she was unable to discover the cause of her unborn child's death within the MTCA limitations period and thus that period was tolled.

¶20.    Two independent questions must therefore be addressed to determine whether summary judgment was proper in this case. First, there is no question that SPCH is a community hospital and therefore a political subdivision of the State of Mississippi. As such, its liability is clearly governed by the MTCA. Second, however, Dr. Quesnel's employment status is not clear from the record and must be addressed pursuant to this Court's MTCA cases and the evidence of record. Finally, since the MTCA's period of

limitations bars claims after one year of injury, Wright's basis for not discovering the cause of the death of her unborn child until beyond that time period is also addressed.

### a. *Is Dr. Quesnel an employee of SPCH, whose liability is therefore governed by the MTCA?*

¶21.    The MTCA "'provides the exclusive civil remedy against a governmental employee for acts or omissions which give rise to a suit.'" ***Watts v. Tsang,*** 828 So. 2d 785, 791 (citing ***L.W. McComb Separate Mun. Sch. Dist*.,** 754 So.2d 1136, 1138 (Miss. 1999); Miss. Code Ann. § 11-46-7(1)(2002). Therefore, any tort claim filed against a public employee, including publicly employed physicians, must be brought under the MTCA. ***Id.*** And "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7 (2) (2002). "The MTCA makes the state responsible for the negligence of its employees at a financial level the legislature has determined to be reasonable." ***Watts,*** 828 So. 2d at 791.

¶22.    In ***Miller v. Meeks,*** this Court held that the MTCA extends immunity to state employed physicians who are not acting as independent contractors. 762 So.2d 302 (Miss. 2002). We also established a five-part test in ***Miller*** to determine whether a state employed physician is an employee or an independent contractor for purposes of MTCA liability. ***Id***. *See also* ***Smith v. Braden***, 765 So. 2d 546 (Miss 2000). The ***Miller*** test considers the following factors:

(1)    the nature and function performed by the employee;

(2)    the extent of the state's interest and involvement in the function;

(3)    the degree of control and direction exercised by the state over the employee;

(4)    whether the act complained of involved the use of judgment and discretion; and

(5) whether the physician received compensation, either directly or indirectly, from the patient, for professional services rendered.

*Miller,* 762 So. 2d at 310. Wright briefs these factors extensively on appeal; and I agree with the majority that certain of them favor Wright's position. However, the majority fails to acknowledge this Court's holding in **Knight** where we held that if physicians do not receive compensation for the practice of medicine from sources *other* than the state hospital then it is not necessary to address the test enunciated in *Miller*. **Knight v. McKee**, 781 So.2d 121, 123 (Miss. 2001). The evidence in this case makes clear that Dr. Quesnel does not receive any compensation other than that provided by SPCH. Accordingly, citing **Knight**, the circuit court below did not apply the *Miller* test. It then ruled that Dr. Quesnel was not an independent contractor and was therefore protected under the MTCA.

¶23. The majority's reasoning on this matter is wrong. While Dr. Quesnel indeed does not receive compensation outside of SPCH, nor does he engage in any form of outside employment, certain evidence in this case conflicts with his employment contract, thus unquestionably calling his employment status into question. The "Conditions of Admissions Form" (Form) that Wright signed upon admission to Dr. Quesnel's care is in *stark conflict* with Dr. Quesnel's employment contract. The circuit court addressed this issue, but ruled that since Wright had not "relied" on the Form, that it was not dispositive of the issue of Dr. Quesnel's employment status; rather, the employment contract was. However, while the circuit court cites to these arguments, they are *nowhere* found in the record before this Court. Further, while Wright may not have relied on the Form, this does not avoid the fact that SPCH has explicitly represented to the public that it is *not* Dr. Quesnel's employer.

### 1. The Employment Contract

¶24.  The employment contract provided in the record and signed by both "employer" and "employee," indicates that Dr. Quesnel is to be the exclusive provider of obstetric and gynecological services at SPCH, that he is to work exclusively for SPCH full time and is to see all Medicare and Medicaid patients regardless of their ability to pay.  SPCH pays Dr. Quesnel a salary,  provides office space, support staff, relocation expenses, term life insurance, medical malpractice coverage, PERS enrollment, reimbursement for pre-authorized professional fees, dues and other business related expenses.  SPCH retains authority to exercise discretion over and give support to Dr. Quesnel in regard to standards, policies,  record keeping, treatment procedures and fees to be charged. But such direction and support "shall not interfere with the usual physician/patient relationship nor be in violation of acceptable medical ethics."  SPCH retains the right to determine which "employee" will render services to its patients. All patients are those of SPCH and all patients belong to and remain SPCH property. When Dr. Quesnel's employment ends, the patients continue to be SPCH's patients, unless they choose otherwise. Finally, all fees for service rendered by Dr. Quesnel shall belong to SPCH; and SPCH takes care of all billing.  Under the terms of the employment contract, therefore, the argument can be made that Dr. Quesnel is in fact an SPCH employee.

### b.  The Conditions of Admission Form

¶25.  The record indicates, however,  that SPCH clearly wants its patients to know and understand that Dr. Quesnel is *not its employee or agent.*  Indeed, Wright's Admission Form, which she had to sign as a condition of admission to SPCH, reads as follows:

> I further understand that the physicians providing care and treatment to me, including radiologists, pathologists, and anesthesiologists, ***are not employees or agents of and are not supervised or controlled by the hospital.***

(Emphasis added).

¶26. The *glaring* conflict between this Form and the employment contract raises a genuine issue of material fact as to Dr. Quesnel's employment status. *SPCH cannot have it both ways.* Dr. Quesnel either is or is not SPCH's "employee." This is an issue of material fact that should have barred granting summary judgment below. Further, as mentioned, the record before this Court does not support the circuit court's ruling that the Form is not dispositive in this case. For these reasons, I disagree with the majority's holding.

¶27. A similar factual scenario occurred in *Miller v. Meeks* in which this Court held that summary judgment against the Plaintiff was improper, in part, based upon his "private clinic" appointment card. 762 So. 2d at 307. The plaintiff-patient, Mr. Fox, was treated by Dr. Meeks at UMMC. Fox was issued appointment cards for his visits which, at the bottom, directed him to the UMMC "private clinic," thus indicating that the services rendered there by Dr. Meeks were not governed by Dr. Meeks UMMC employment contract but rather by Dr. Meeks as a *private* physician. *Id*. Ultimately, the "private clinic" declaration on Fox's appointment card, in conjunction with Dr. Meek's fee/pay arrangements with UMMC for services rendered there, were enough for this Court to reverse summary judgment as to whether Dr. Meeks was an employee of UMMC while serving in the "private clinic." *Id.* at 309. Similarly, in the present case, was Dr. Quesnel acting as a private physician, if in fact, the Form clearly said he was *not* an SPCH employee? In both *Miller* and the present case, the hospital attempted to declare the same thing: It is not responsible for the treatment provided by this particular doctor, period; the doctor is on his own.

¶28. Since SPCH's own representation that Dr. Quesnel is not an employee is contradicted by its employment contract, summary judgment for Dr. Quesnel on this issue was improper. Therefore, I disagree with the majority's rationale on this matter.

### b. *Did Wright's inability to discover the cause of her child's death toll the MTCA one-year period of limitations?*

¶29. The majority holds that Wright should have known that there was some causal connection between Dr. Quesnel's negligence and the death of her child. The majority's rational in this finding is totally erroneous. It escapes me how the majority can link a causal connection between Wright's child dying in the womb and the actions of Dr. Quesnel. The doctor ordered Wright bed rest on her first visit, on her second visit she did not receive treatment, and on her third treatment she complained of severe pain resulting in her child dying in the womb. This is clearly not enough information to form a causal connection between the child's death and the doctor's negligence.

¶30. Wright's child died in the womb on August 26, 1999. It was not until March, 2001, however, that she claims to have discovered the cause of death, after which time she immediately filed suit against Dr. Quesnel and later against SPCH asserting medical negligence as that cause. Neither suit was filed within the MTCA's limitations period. Wright claims, however, that the discovery rule should toll that period because she was not able to discover the cause of her child's death until she received a medical expert opinion provided through her attorney. The circuit court ruled against Wright on this issue, finding that Wright made no claim as to "latent" injuries, nor had she offered evidence that she "could not have" discovered the injury within the applicable statute of limitations. The court further indicated that it could not "say that Wright used reasonable diligence in determining the causal relationship between the alleged negligence and the death of the child."

¶31. The MTCA allows one year from the date of injury during which a plaintiff must file a complaint against a physician or hospital thereunder covered. Miss. Code. Ann. § 11-46-1-23 ( 2002). However, in *Barnes v. Singing River Hospital Sys*., 733 So. 2d 199 (Miss. 1999), this Court held that the

13

discovery rule applies to the statute of limitations governing MTCA actions against state agencies. *Id.* at 205. Specifically, we held that the statute of limitations did not begin to run in that case until the medical expert notified the Barneses' attorney of possible negligence. *Id*. at 206. Specifically, although the Barneses were aware of the injuries before the one year time limit was up, we found that they could not have reasonably known that the hospital was responsible "until their medical expert notified them of the possible negligence.*" Id.* We concluded:

> Because we find that the Barnes promptly filed their claim within one year *of discovery of Singing River's alleged negligence in this case*, we must reverse the trial court's award of summary judgment and remand this case....

*Id*. at 201 (emphasis added). We relied on *Smith v. Sanders,* 485 So.2d 1051 (Miss. 1986), in *Barnes* to justify our holding, citing that portion of *Sanders* which reads as follows:

> There may be rare cases where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Sanders*, 485 So.2d at 1052-53. As mentioned, here Wright claimed that although she was aware of the death of her child on the date of death, she was not able to discover the cause thereof until she was so informed by her attorney's medical expert. This was the identical basis for holding that the limitations period in *Barnes* was tolled. *Barnes,* 733 So.2d at 206.

¶32. The circuit court considered Wright's argument in light of both *Barnes* and *Sanders,* but concluded that "this is not one of those rare cases our court has referenced to in *Barnes*." Based on *Barnes,* however, I disagree with the majority's holding and find that this is an issue of fact as to this matter as well. Whether a case is "rare" or whether the plaintiff has exercised "reasonable diligence" are

14

not matters of law. *Id.* Accordingly, as was the result in ***Barnes***, I cannot agree with the majority's finding that summary judgment was proper.

¶33. The majority's holding and reasoning in the case at bar are misplaced. Having found that genuine issues of material fact exist as to (1) Dr. Quesnel's employment status, based on explicit conflicts between his employment contract and SPCH's statement in its "Conditions of Admission Form" that he is *not* its employee, and (2) whether the MTCA's statute of limitations was tolled due to Wright's inability to discover the cause of the death of her unborn child within that period, I would reverse the trial court's judgment and remand this case for further proceedings. Therefore, I respectfully dissent.