United States Court of Appeals
Fifth Circuit

**F I L E D**

September 15, 2006

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*for the Fifth Circuit*

No. 04-60962

BARBARA HUSS; RODNEY HUSS,

Plaintiffs – Appellees,

v.

JOHN OVERTON GAYDEN, M.D.; MEMPHIS OBSTETRICS AND
GYNECOLOGICAL ASSOCIATION PC,

Defendants – Appellants.

Appeal from the United States District Court
for the Northen District of Mississippi

Before HIGGINBOTHAM, DeMOSS and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this medical malpractice case, we conclude that the applicable Mississippi statute

of limitations, MISS. CODE ANN. § 15-1-36, bars the claims at issue.  We accordingly reverse

the district court's judgment and render judgment that the plaintiffs take nothing.

**I**

Barbara Huss became Dr. Andrea Giddens's patient at Memphis Obstetrics and

Gynecological Association PC (Memphis OB/GYN) on February 17, 1998.  At that time,

Huss was twenty-seven weeks pregnant.  Huss informed Dr. Giddens of her relevant medical

history, which included weight gain of between forty and fifty pounds during pregnancy, continued cigarette smoking throughout pregnancy, one prior childbirth by Cesarean section, three miscarriages, prior ovarian cysts, and the recent diagnosis of diabetes. Dr. Giddens immediately concluded that Huss was a high-risk pregnancy and directed her to cease working for the remainder of her pregnancy.

On March 8, 1998, Huss was feeling increased cramping and pressure and sought treatment at Memphis OB/GYN. Her contractions were five-to-ten minutes apart, and she thought she was in labor. The on-call physician, Dr. John Albritton, attempted to stop the contractions and avoid premature childbirth. He did not see Huss, but instead communicated by telephone with a nurse, first ordering intravenous hydration and the drug Stadol. When the contractions continued, Dr. Albritton ordered injections of Terbutaline, and the contractions ceased.

The next day, on March 9, 1998, a third Memphis OB/GYN physician, Dr. John Gayden, treated Huss and continued to administer Terbutaline. The following day, Huss was examined by Dr. Giddens, her principal attending physician at Memphis OB/GYN. Dr. Giddens also prescribed oral Terbutaline for Huss, which was to be taken daily for several weeks. Huss saw Dr. Giddens on more than one occasion thereafter, and as late as April 21, 1998, Huss was taking Terbutaline and had not been instructed to stop.

From March 8, 1998 until her child was delivered, Huss experienced various symptoms that caused her to seek emergency treatment on more than one occasion. On May 5, 1998, Huss's physical condition was such that an attempt to induce delivery was made but

2

was unsuccessful. Huss's daughter was then successfully delivered by Caesarean section on May 6, 1998, and Huss was discharged from the hospital May 9, 1998. The following day, May 10, 1998, Huss sought treatment in the emergency room because of difficulty breathing and was diagnosed with cardiomyopathy, pulmonary edema, and congestive heart failure.

In June 1999, Huss and her husband, Rodney, sued Dr. Giddens for malpractice. That case was subsequently dismissed on jurisdictional grounds. On June 30, 2000, more than two years after Huss's heart and lung conditions were diagnosed, the Husses sued Dr. Gayden and Memphis OB/GYN, alleging that their negligence in treating her and in prescribing and administering Terbutaline caused her medical conditions and injuries. Dr. Giddens is not a party to this lawsuit.

In their answer to the complaint, the defendants included as an affirmative defense the contention that the Husses' claims were barred by Mississippi's two-year statute of limitations. Before trial, a case management order was entered setting a deadline for filing motions other than motions *in limine*. Neither party requested an extension of that deadline, and the defendants did not file a dispositive motion based on limitations before the deadline expired. A pretrial order listed summaries of the parties' arguments and contested issues of law and fact. The defendants' statute-of-limitations defense was not included as a contested legal or fact issue, but it was noted on the last substantive page of the order in a section pertaining to "additional matters to aid in the disposition of [the case]."

The parties had consented to proceed to trial with a magistrate judge presiding, and a jury returned a verdict awarding $3.5 million in damages to compensate Barbara Huss for

3

her personal injury claim. The defendants then moved for judgment notwithstanding the verdict, or in the alternative for a new trial, on a number of grounds including limitations. The motion was denied on all counts in a written opinion. The magistrate judge rejected the defendants' limitations defense because it was not filed by the motions deadline in the case management order and further concluded that "[the] defendants failed to establish the approximate date on which the statute of limitations began to run" because there was no proof of the date by which plaintiff knew or should have known [that Terbutaline was probably the cause of her injury and that her physicians should not have given her the drug]." Previously, the judge had denied the defendants' Rule 50(a) motion for directed verdict based on limitations, suggesting that this motion was denied in part because limitations was not asserted as an issue of law or fact in the pretrial order. However, in ruling on the defendants' post-verdict motions, the judge explicitly stated that the basis for denying the earlier motion "was not . . . because [the limitations issue] was listed in the wrong place on the Pretrial Order."

On appeal, the defendants argue that (1) the Husses claims are barred by the statute of limitations, (2) there is insufficient evidence to prove that Terbutaline caused Barbara Huss's injuries, (3) the magistrate judge improperly excluded a defense expert's testimony regarding causation, (4) there were errors in the jury charge, (5) the judge made prejudicial comments before the jury, and (6) the judge failed to correct a mischaracterization of the evidence during the plaintiffs' closing argument. Because we hold that the Husses' claims are barred by limitations, we do not address causation, exclusion of the defense expert's

4

testimony, or any of the other issues raised in this appeal.

## II

The magistrate judge concluded that the defendants waived their statute-of-limitations defense by failing to file a dispositive motion within the time specified in the case management order for motions other than motions *in limine*. The defendants were not required to file a motion for summary judgment as a predicate to moving for a directed verdict under Rule 50(a) at the close of the evidence. Rule 50(a) authorizes a party to move for judgment as a matter of law any time before submission of the case to the jury "[i]f *during a trial* by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[1] Certainly, the defendants could have raised limitations by a pre-trial dispositive motion asserting that there is no fact issue concerning when limitations accrued. But a court order setting a pre-trial "motions" deadline could no more foreclose a party's right to make a motion under Rule 50(a) than it could preclude a party from filing a motion for new trial. To the extent the magistrate judge concluded otherwise, it was in error.

The Husses also assert that the defendants abandoned the limitations defense by failing to list it as a contested issue of fact or law in the pretrial order. We disagree. The statute-of-limitations issue was sufficiently identified in the pretrial order as an issue of continuing concern. By including the defense as an additional matter that would affect

---

[1]FED. R. CIV. P. 50(a).

disposition of the case, the defendants indicated an intent to pursue their limitations defense as a bar to the Husses' claims.

## III

The parties agree that the statute governing limitations in this case is section 15-1-36 of the Mississippi Code, which provides that "no claim in tort may be brought" against a physician or arising out of the course of medical services "unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered."[2] The Husses sued the defendants on June 30, 2000. There was no jury question submitted concerning the date the Husses' cause of action accrued; therefore, defendants can prevail on their statute of limitations defense only if the

---

[2]The pertinent parts of section 15-1-36 provide:

(1)      For any claim accruing on or before June 30, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.

(2)      For any claim accruing on or after July 1, 1998, and except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, institution for the aged or infirm, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered, and . . . in no event more than seven (7) years after the alleged act, omission or neglect occurred [subject to some exceptions not applicable here].

MISS. CODE ANN. § 15-1-36(1), (2).

6

Husses' claims accrued before June 30, 1998 as a matter of law.

Judgment as a matter of law is appropriate if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue."[3] We review the denial of motion for judgment as a matter of law *de novo*, drawing all reasonable inferences in favor of the nonmoving party.[4] We cannot make credibility determinations or weigh the evidence, and "'we must disregard all evidence favorable to the moving party that the jury is not required to believe.'"[5] Because this is a diversity case, we are bound by state law.[6]

The Mississippi Supreme Court has decided several cases in recent years regarding limitations. The most analogous decision is *Wright v. Quesnel*, in which the plaintiff was treated by an obstetrician throughout her pregnancy.[7] During her eighth month, she exhibited high blood pressure and possible pre-eclampsia. Her obstetrician recommended bed rest. Three days later, she again sought treatment from this physician and was again ordered to rest in bed. Another three days passed, and the plaintiff presented with severe pain, at which time her obstetrician determined that her child had died *in utero*. The Mississippi Supreme Court held, as a matter of law, that limitations began to run on the date of the child's death.

---

[3]FED. R. CIV. P. 50(a).

[4]*Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002).

[5]*Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[6]*See Mathis v. Exxon Corp.*, 302 F.3d 448, 453 (5th Cir. 2002).

[7]876 So.2d 362, 367 (Miss. 2004).

"[The plaintiff] had enough information at the time of death such that she knew or reasonably should have known that negligence had occurred."[8] The court explained that the plaintiff had seen her obstetrician "twice and received no treatment but an order to rest – her symptoms and discomfort continued, however. When she discovered that her child had died in the womb, Wright should have known that there was some causal connection between the death and Dr. Quesnel's treatment."[9] The case was decided on summary judgment, and pointedly, the Mississippi court observed that the plaintiff "did not offer any evidence that she could not have discovered the injury within the applicable statute of limitations."[10]

The statute at issue in *Wright* was MISS. CODE ANN. § 11-46-11 (2002), the limitations provision in the Mississippi Tort Claims Act, rather than section 15-1-36. However, the Mississippi Supreme Court has held that section 11-46-11, like section 15-1-36, is subject to the discovery rule and that "'the operative time [for the commencement of the limitations period] is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.'"[11] Accordingly, there is no meaningful distinction

---

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1001 (Miss. 2004) (quoting *Sarris v. Smith*, 782 So.2d 721, 725 (Miss. 2001)).

8

between sections 11-46-11 and 15-1-36, as interpreted by the Mississippi courts.[12]

In the case before us, the evidence adduced at trial demonstrates that suit was filed more than "two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered."[13] On May 10, 1998, Huss was diagnosed with the injuries of which she now complains. As of that day, she knew she had been treated over the course of her pregnancy by the defendants and had experienced difficulties that resulted in her seeking emergency medical treatment on several occasions. She also knew the defendants had prescribed Terbutaline, which she had taken continuously for more than six weeks. All the facts forming the basis of her claim were known as of May 10, 1998. Applying the reasoning of *Wright*, the plaintiffs "should have known that there was some causal connection"[14] between the treatment Barbara Huss received from the defendants and her injuries, even if they did not know the precise cause of those injuries. Although the Mississippi Supreme Court has stated that knowledge of "'a causal relationship between the negligent act and the injury or disease complained of *is essential* because "it is well-established that prescription does not run against one who has neither actual nor

---

[12]*See Powe v. Byrd*, 892 So.2d 223, 227 (Miss. 2004) (construing MISS. CODE ANN. § 15-1-36 and holding that "[f]or purposes of the discovery rule, the two-year period begins to run when 'the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner'" (quoting *Sarris*, 782 So.2d at 723)).

[13]MISS. CODE ANN. § 15-1-36.

[14]*Wright*, 876 So.2d at 367.

constructive notice of the facts that would entitle him to bring an action,"""[15] the court has explained this means "that the 'focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he *probably* has an actionable injury.'"[16] The court has also candidly acknowledged that "[s]everal [of its] recent decisions further erode the level of knowledge required to vest a cause of action" for purposes of statutes of limitations.[17]

In *Powe v. Byrd*, another recent medical malpractice case from the Mississippi Supreme Court, the plaintiff received a course of treatment over approximately two years for gastritis and hemorrhoids.[18] He was ultimately diagnosed in March 1998 with cancer in his colon and lungs and died in August of that year. His survivors contended that limitations on Powe's claim against the physician who failed to diagnose the cancer did not commence under section 15-1-36 until December 1, 2000, when the plaintiffs received an expert's opinion that the treating physician's negligence may have caused Powe's death. The Mississippi Supreme Court held, as a matter of law, that section 15-1-36 barred the claim. The court reasoned, "Cecil [Powe] received treatment for gastritis and hemorrhoids for approximately two years from the Medical Group Clinic; he eventually discovered in March

---

[15]*PPG Architectural Finishes, Inc. v. Lowery*, 909 So.2d 47, 50 (Miss. 2005) (quoting *Sweeney v. Preston*, 642 So.2d 332, 334 (Miss. 1994)).

[16]*Id*. at 51 (quoting *Wright*, 876 So.2d at 366) (emphasis in original).

[17]*Id*.

[18]892 So.2d 223, 225 (Miss. 2004).

of 1998 that his problems were far worse than expected and that he had colon cancer."[19]

The Mississippi Supreme Court elaborated on its holding in *Powe* in a subsequent case, *PPG Architectural Finishes, Inc. v. Lowery*.[20]  The court explained, "In *Powe*, this Court found that a plaintiff's receipt of medical treatment for two years demonstrated that he knew or reasonably should have known about his injuries [and] . . . specifically rejected his claim that the statute of limitations began running when he received an expert opinion because [he] had known of his injury as evinced by the two years of prior medical treatment for the injury."[21]  This rationale compels the conclusion that Barbara Huss knew or reasonably should have known of her injury when she was diagnosed on May 10, 1998 with cardiomyopathy, congestive heart failure and pulmonary edema after a difficult pregnancy that included administration of Terbutaline.[22]

---

[19]*Id.* at 227-28.

[20]909 So.2d 47 (Miss. 2005).

[21]*Id.* at 51.  *But see Barnes v. Singing River Hosp. Sys.*, 733 So.2d 199, 206 (Miss. 1999) (construing MISS. CODE ANN. § 11-46-11(3) and holding that a husband and wife "may have been aware of [the wife's] injuries before the one year time limit was up, [but] they could not reasonably have known that [the hospital] was responsible for those injuries until their medical expert notified them of the possible negligence").

[22]*See Wayne Gen. Hosp. v. Hayes*, 868 So.2d 997, 1001 (Miss. 2004) (holding, as a matter of law, that at the time of a child's death, her parents "had enough information such that they knew or reasonably should have known that some negligent conduct had occurred, even if they did not know with certainty that the conduct was negligent as a matter of law" because the death certificate included sepsis as one of the causes of death; the court said, "[I]t should have been apparent to the plaintiffs that *some* negligent conduct had occurred" even if they did not know what that conduct was (emphasis added)); *Gentry v. Wallace*, 606 So. 2d 1117, 1118, 1119 (Miss. 1992) (observing in a wrongful death case that a decedent's cause of action for malpractice would have accrued when she was diagnosed with breast cancer, which her treating physicians had failed to diagnose in the preceding six months despite a previous history of breast cancer and complaints of swollen lymph

Unlike the plaintiff in *Sarris v. Smith*,[23] Barbara Huss did not need to await receipt of her medical records to have known of the causal relationship between her treatment by the defendants and her cardiomyopathy, congestive heart failure and pulmonary edema. In *Sarris*, Shelby Johnson had a heart attack and was examined at an emergency room. The principal treating physician consulted with a cardiologist, who failed to tell either Johnson or the treating physician that Johnson should seek follow-up care and failed to make any notation to that effect in the medical charts. Unaware of the need for follow-up, the treating physician released Johnson from the hospital, and a few days later Johnson suffered a fatal heart attack at his home. The Mississippi court held that Johnson's wife "could not reasonably have known, until she reviewed the medical records, the causal relationship between Johnson's death and [the cardiologist's] failure to inform either him or [his treating physician] that Johnson needed follow-up treatment."[24] Huss, however, had all the operative facts by May 10, 1998. She did not need access to her medical charts to discover her injuries, who treated her, or that Terbutaline was prescribed for her.

The dissent contends that when a physician denies that a patient's injury was caused by the physician's course of treatment or administration of a drug, limitations does not commence to run unless and until causation is established at trial by a jury's findings. This

nodes and other disturbing symptoms), *overruled on other grounds by Jenkins v. Pensacola Health Trust, Inc.*, 933 So.2d 923, 926 (Miss. 2006).

[23]782 So.2d 721 (Miss. 2001).

[24]*Id.* at 723-24.

would mean that limitations never commences to run with respect to non-negligent physicians. The Mississippi courts have not construed section 15-1-36 in this manner. They have said, "[T]he 'focus is on the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he *probably* has an actionable injury.'"[25]

Because the plaintiffs filed suit more than two years after the date the alleged act, omission or neglect was or with reasonable diligence might have been first known or discovered, the plaintiffs' claims are prescribed as a matter of law, and the magistrate judge erred in denying the defendants' motion for judgment as a matter of law. We therefore REVERSE the trial court's judgment and RENDER judgment that the plaintiffs take nothing.

REVERSED AND RENDERED

---

[25]*PPG Architectural Finishes*, 909 So.2d at 51 (quoting *Wright*, 876 So.2d at 366) (emphasis in original).

PATRICK E. HIGGINBOTHAM, Circuit Judge, dissenting:

Under the controlling law of Mississippi, "the operative time [the trigger of limitations] is when the patient can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner."[1] The majority concludes that this medical malpractice case should never have gone to trial because the patient, on learning of her injury, should have connected her medical condition with a particular drug given over a course of treatment. In doing so, my colleagues misread the law and unwittingly sanction a trial stratagem of defendants. Respectfully, I dissent.

First there is underbrush to be put aside. Nothing supports any implication that Mississippi law allocates to the judge, and not the jury, all questions of when a patient should have known of a causative link between injury and conduct. Nor is there a basis for concluding that application of the statute always presents only a question of law. Indeed, the language of the limitations trigger in the Mississippi statute — "shall or with reasonable diligence might have first been known or discovered"[2] — poses a fact

---

[1] *Sarris v. Smith*, 782 So.2d 721, 723 (Miss. 2001) (*quoting Smith v. Sanders*, 485 So.2d 1051, 1052 (Miss. 1986)).

[2] MISS. CODE. ANN. § 15-1-36(2).

14

question.  And of course conceded knowledge of a patient that he has an injury and that he has been treated does not mean that the ultimate questions of reasonableness and diligence are questions of law.

There is another wrinkle here.  For transparent reasons, defendants did not seek a jury determination of their limitations defense, preferring to relinquish all of the defense except a contention that the case was time-barred as a matter of law.  It follows that the entry of judgement on the verdict is supported by an implied jury finding of any question of fact necessary to rejection of the defense of limitations.[3]

The failure of defendants to seek a jury determination on the limitations defense was no accident.  The fight at trial was causation.  Defendants maintained that the prescribing doctors could not have known that Terbutaline was a cause of Huss's condition because there was no link between the two; the heart condition was idiopathic.  It would have been awkward at best to also ask the jury to find that Huss, an untrained layperson, should have looked at Terbutaline as a culprit.  Defendants elected to pitch to the jury their contention of no causation unimpeded by the conflicting contention that the patient should have known what the defendant doctors did not.  And now, on appeal, defendants contend that there is insufficient evidence to support the finding of

---

[3] *See* FED. R. CIV. P. 49.

15

causation but, faced with conflicting medical opinions expressed to the jury, add the contention that in any event this layperson should have made the link, as a matter of law. This bold contention cannot be sustained under the decisions of the Supreme Court of Mississippi.

The majority relies primarily on *Wright v. Quesnel*, but that reliance is misplaced. Essentially, the pregnant patient in *Wright* exhibited troubling symptoms on two occasions, the doctor ordered bed rest both times, and then the child died *in utero*. Any reasonable person would connect the child's death to the lack of treatment. Here, by contrast, Huss exhibited troubling symptoms of early contractions, the doctors treated those early contractions with Terbutaline (and other treatments), and then the early contractions ceased[4] and she gave birth. And then she was diagnosed with cardiomyopathy. In other words, the treatment here did what it was supposed to do; the allegation is that it did more, which the Husses had to figure out. In *Wright*, the treatment (or lack thereof) did not do what it was supposed to do. And, of course, it is always easier to connect a total lack of treatment to an injury than which of multiple treatments caused an injury. The patient in *Wright* needed no further investigation; the Husses did.

The other cases cited by the majority are inapposite for

---

[4] There is some evidence that Terbutaline did not fully stop the early contractions. That is irrelevant, since the allegation is not that Terbutaline harmed the child or did not cease the contractions.

16

similar reasons. In *Powe v. Byrd*, the doctor mis-diagnosed colon cancer as gastritis and hemorrhoids for two years. As in *Wright*, any reasonable person would have recognized negligence on the date injury (cancer) was discovered — after all, the plaintiff knew then that the original diagnosis was wrong and its resulting treatment more or less useless.[5] In *PPG Architectural Finishes, Inc. v. Lowery*, where the plaintiff admitted that she knew "when, how, and by whom she had been injured on the night of her exposure" to paint fumes, the court merely held that limitations began to run that night — after she passed out, went to the emergency room, and the doctor's "impression" was injury caused by paint fumes — not when the plaintiff later received "definitive medical confirmation" that her resulting brain damages was caused by the fumes.[6] The difference between that case and ours needs no explanation. In *Wayne General Hospital v. Hayes*, the plaintiffs had enough information when their child's death certificate indicated "sepsis" and the child had been hospitalized a second time after the negligence occurred. The court implicitly held that sepsis is strongly correlated with negligence, leading any diagnosis of

---

[5] 892 So.2d at 227-28; *see also Gentry v. Wallace*, 606 So.2d 1117, 1119 (Miss. 1992) (similar). Moreover, *Powe* found the plaintiffs' limitations argument "disingenuous" because the plaintiff's first petition alleging negligence, dismissed for lack of process, was filed *before* the date plaintiffs were arguing the clock began to run. 892 So.2d at 28.

[6] 909 So.2d at 48-52.

sepsis to cause sufficient suspicion.[7] Cardiomyopathy is different, and a reasonable person would need more than diagnosis of it to suspect negligence.

I do not see *Erie* as simply a rule controlling the source of substantive law where federal jurisdiction rests on diversity of citizenship. Rather, it is an order of constitutional magnitude allocating state and federal power, reinforced by strands of separation of powers, as Professor Mishkin has explained.[8] Hence my disagreement with my colleagues goes beyond principled readings of decisions by a state supreme court in discharge of our *Erie* duty. The legislature of the State of Mississippi, responding to political forces conflicted over the need of doctors to be free of frivolous and stale claims and the protection of patients from bad medicine, enacted the statute at hand. This statute, with its interpretations by the Supreme Court of Mississippi, are the sources from which the question before us today must find its answer. We have a reticulated pattern of cases, some of which find no fact issues where it is undisputed that a patient knows both that he is injured and must as a reasonable man then know that the arrow points to the doctor. Errors in diagnosis — for example, you have a fatal heart attack after being told it's only indigestion —

---

[7] 868 So.2d at 1005.

[8] *See generally* Paul Mishkin, *Some Further Last Words on* Erie *— the Thread*, 87 HARV. L. REV. 1682 (1974).

18

are of this genre.  And then there are fact patterns which can sustain differing results.

But what we do not have from the Mississippi courts is the bright line rule announced by the majority — limitations is triggered by knowledge of injury alone, the causative component dropping away because limitations is triggered "as a matter of law."  The majority does this because it says that these facts permit no conclusion but that limitations commenced to run when the patient learned she had a major heart problem because she should have then immediately focused on Terbutaline, even though the treating doctors swear that the drug had nothing to do with her condition and, significantly, that the cause of her injury was unknowable.  This is a fundamental restatement of the balance struck by the Mississippi legislature.  Whether it is good policy or needed reform by some abstract measure of social justice I do not know.  But it is not in the constitutive order of things for three Texas judges, even as well-intentioned and able as my colleagues, to decide for the State of Mississippi.  At the least we should be most hesitant to trim the role of the jury without much clearer direction from the state.

Contrary to the majority's statement, I do not maintain that limitations here does not "commence to run unless and until causation is established at trial by a jury's finding."  Rather, I maintain that a jury should have decided the fact question

19

presented by the limitations defense in this case — or, rather, that it was a fact question wisely dropped by defendants given their defense that causation was unknowable by anyone. In many, perhaps most, cases, there are plausible causation arguments on both sides. In such cases, defendants can argue lack of causation and, simultaneously, argue that plaintiffs, under their own theory of causation, should have connected injury to negligence at a certain date, triggering limitations. Here, however, the defense was that causation was unknowable by anyone, doctor or layman, because the injury was idiopathic. Perhaps the Husses nonetheless should have suspected what the doctors say they never suspected. But to conclude as a matter of law that they should have writes a powerful new policy for the State of Mississippi — painless tort reform by decree, not ballot.