United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————————————

No. 04-60526

———————————————

CYNTHIA BROWN,

Plaintiff-Counter Defendant-Appellant,

versus

JOHN C. MORRIS, III, Etc.; ET AL.,

Defendants,

JOHN C. MORRIS, III, also known as Jay,
Both in his individual and official capacity;
MORRIS AND ASSOCIATES,

Defendants-Appellees,

ABN AMRO MORTGAGE GROUP INC.,

Defendant-Counter Claimant-Appellee.

———————————————————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
(1:00-CV-498-GuRo)

———————————————————————————————————

Before SMITH, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

A jury found against Cynthia Brown on her claims against ABN
AMRO Mortgage Group, Inc., and John Morris and his law firm, Morris
& Associates (collectively, Morris), for, *inter alia*, violation of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA). Brown primarily contests the denial of her post-verdict motion for judgment as a matter of law (JMOL). **AFFIRMED.**

I.

In 1993, Brown executed a promissory note and deed of trust to finance her home in Gulfport, Mississippi. The note was for $72,350 (payable monthly, with a final payment due 1 January 2001); it was eventually assigned to Atlantic Mortgage & Investment Corporation (AMIC). On 18 November 1999, ABN AMRO purchased all of AMIC's stock; the two corporations merged on 14 January 2000. ABN AMRO, as the surviving corporation, became the holder and servicer of Brown's note.

Between 1998 and 2000, Brown was frequently late with her monthly note payments; she made none after the payment due 1 February 2000. Accordingly, in August 2000, ABN AMRO engaged Morris to foreclose on Brown's home. Morris took steps toward completing a non-judicial foreclosure, and a foreclosure sale was scheduled for 27 October 2000. Defendants, however, voluntarily ceased foreclosure efforts on that date.

Brown filed this action that October. At trial in 2004 she asserted, *inter alia*: claims under the FDCPA and Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (RESPA); and state-law claims for, *inter alia*, negligence, breach of contract,

2

and intentional infliction of emotional distress. ABN AMRO counterclaimed for the amount owed under the note.

At the close of the evidence, the district court granted JMOL: in favor of ABN AMRO and Morris on Brown's intentional-infliction-of-emotional-distress claim; and in favor of ABN AMRO on the FDCPA claim, some of the RESPA claims, and its counterclaim, subject to the jury's finding the amount owed.

Subsequently, for all remaining claims, including under the FDCPA against Morris, the jury found for defendants and awarded ABN AMRO approximately $97,000 on its counterclaim. Brown's post-trial motions for JMOL, or in the alternative, a new trial and remittitur, were denied.

## II.

Primarily at issue are the district court's JMOL rulings. In the light of these rulings' *not* being erroneous, the denial of the alternative motion for a new trial or remittitur is also upheld.

Also at issue is whether the district court erred: in permitting ABN AMRO to pursue its counterclaim; in its jury instructions; and in permitting testimony about settlement discussions. To the extent Brown raises issues regarding her negligent-infliction-of-emotional-distress claim, we do *not* consider them; Brown voluntarily dismissed that claim. Similarly, we do *not* consider her inadequately-briefed contentions regarding discovery rulings. Despite Brown's *pro se* status, these claims are

3

waived.  *See* FED. R. APP. P. 28(a)(9)(A); ***Grant v. Cuellar***, 59 F.3d 523, 524 (5th Cir. 1995).

A.

Brown contests the district court's close-of-the-evidence and post-verdict JMOL rulings.  A JMOL ruling is reviewed *de novo*. *E.g.*, ***Huss v. Gayden***, 465 F.3d 201, 205 (5th Cir. 2006).  JMOL is proper when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue".  FED. R. CIV. P. 50(a)(1) (as amended effective 1 December 2006; stylistic changes only, *see* advisory committee's note). "[A]ll reasonable inferences [are made] in favor of the nonmoving party".  ***Huss***, 465 F.3d at 205.

1.

For her FDCPA claims, Brown contests:  the close-of-the-evidence JMOL for ABN AMRO; and the post-verdict JMOL-denial.

a.

In granting JMOL to ABN AMRO on Brown's FDCPA claims at the close of the evidence, the district court held:  ABN AMRO acquired Brown's mortgage by merger, rather than by transfer or assignment; and, accordingly, it was not an FDCPA debt collector, pursuant to 15 U.S.C. § 1692a(6)(F)(iii) (exempting from the definition any person conducting collection activities "concern[ing] a debt which was not in default at the time it was obtained by such person").

4

Brown contends that exemption is inapplicable, maintaining ABN AMRO "obtained" her mortgage while it was in default.

Because the FDCPA does not define the term "obtained", we may look to the act's legislative history in interpreting it. *See*, *e.g.*, **Goswami v. Am. Collections Enter., Inc.**, 377 F.3d 488, 492-93 (5th Cir. 2004). "The Senate Report accompanying the FDCPA explained that the purpose of the act was 'to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors.'" **Peter v. GC Servs. L.P.**, 310 F.3d 344, 351-52 (5th Cir. 2002) (quoting S. REP. NO. 95-382 (1977), at 1-2, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696). That report, *inter alia*: "intend[ed] the term 'debt collector[]' ... to cover all third persons who regularly collect debts for others", S. REP. NO. 95-382, at 3; and stated "[t]he primary persons intended to be covered are independent debt collectors", *id.*

Along that line, our court has at least implicitly interpreted "obtained" to be synonymous with "assigned". *See* **Perry v. Stewart Title Co.**, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.").

5

ABN AMRO, a mortgage company, was not specifically assigned Brown's mortgage for debt-collection purposes. Rather, ABN AMRO acquired it through its merger with Brown's previous mortgage company. Accordingly, ABN AMRO did *not* "obtain" her mortgage while it was in default.

b.

The jury found Morris was *not* a "debt collector" pursuant to the FDCPA. It defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another". 15 U.S.C. § 1692a(6). Whether a party "regularly" attempts to collect debts is determined, of course, by the volume or frequency of its debt-collection activities. *See Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997).

Morris testified he is involved primarily in non-judicial foreclosures. Brown contends: a non-judicial foreclosure is *per se* FDCPA debt collection; and, accordingly, Morris is *per se* an FDCPA debt collector.

Brown's contention, however, ignores § 1692a(6)'s distinction between debt collection and enforcement of a security interest. *See* § 1692a(6) ("[f]or the purpose of section 1692f(6) of this title, ['debt collector'] also includes any person who uses any

6

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests"); *Kaltenbach v. Richards*, 464 F.3d 524, 527 n.3 (5th Cir. 2006) (acknowledging this distinction). Consistent with this distinction, our court has at least implicitly recognized that a foreclosure is *not per se* FDCPA debt collection. *See Kaltenbach*, 464 F.3d at 527 (where defendant initiated an executory-process foreclosure on plaintiff's home, our court stated the issue as "whether [defendant] is subject to § 1692g if he satisfies the general definition of a debt collector, even though he was merely enforcing a security interest in his dealings with [plaintiff]"). Accordingly, Morris is not *per se* an FDCPA debt collector.

2.

Brown challenges the JMOL rulings against her remaining RESPA, negligence, and breach-of-contract claims. Regarding the close-of-the-evidence JMOL for ABN AMRO on some of her RESPA claims, Brown does *not* show the district court erred in concluding, pursuant to 24 C.F.R. § 3500.21(d)(1)(i), ABN AMRO was not required to provide her with a post-merger notice of the transfer of servicing rights. Further, Brown fails to point to adequate record evidence establishing she was entitled to a verdict on her negligence, breach-of-contract, and remaining RESPA claims.

B.

Next, Brown maintains the district court erred in granting ABN AMRO leave to amend to pursue its counterclaim because, *inter alia*, the district court lacked jurisdiction over it. Challenges to subject-matter jurisdiction are reviewed *de novo*, *e.g.*, **Crockett v. R.J. Reynolds Tobacco Co.**, 436 F.3d 529, 531 (5th Cir.), *cert. denied*, 126 S. Ct. 2945 (2006); leave-to-amend rulings, for abuse of discretion, *e.g.*, **Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.**, 117 F.3d 180, 192 (5th Cir. 1997).

Needless to say, ABN AMRO's counterclaim involves many of the facts relevant to Brown's other claims, including: Brown's rights and obligations under the note; her failure to make payments; and defendants' efforts to obtain payment. Accordingly, the district court had supplemental jurisdiction over the counterclaim and did not abuse its discretion in allowing it to be asserted. *See* 28 U.S.C. § 1367; **Plant v. Blazer Fin. Servs., Inc.**, 598 F.2d 1357, 1364 (5th Cir. 1979) (holding, in truth-in-lending case, a state debt-collection counterclaim was compulsory because "the obvious interrelationship of the claims and rights of the parties, coupled with the common factual basis of the claims, demonstrates a logical relationship between the claim and counterclaim").

C.

Brown next challenges the jury instructions. Properly challenged instructions are reviewed for abuse of discretion.

8

*E.g.*, ***Fiber Sys. Int'l, Inc. v. Roehrs***, 470 F.3d 1150, 1158 (5th Cir. 2006). To establish error, the challenging party must first show the instruction as a whole "creates substantial doubt as to whether the jury was properly guided". ***Green v. Adm'rs of the Tulane Educ. Fund***, 284 F.3d 642, 659 (5th Cir. 2002). Even if the instruction was erroneous, we will not reverse if it "could not have affected the outcome of the case". ***Id.*** Further, a party challenging the failure to include a requested instruction must show it properly states the law. *E.g.*, ***Russell v. Plano Bank & Trust***, 130 F.3d 715, 719 (5th Cir. 1997).

For the first time on appeal (mandating plain-error review), Brown asserts error in the jury's being instructed that, "[o]rdinarily, the mere activity of foreclosing ... under a deed of trust is not the collection of a debt within the meaning of the [FDCPA] unless other actions are taken beyond those necessary to foreclose under the deed of trust, and were taken in an effort to collect a debt". As discussed *supra*, a non-judicial foreclosure is not *per se* FDCPA debt collection. Brown fails to show this instruction "creates substantial doubt as to whether the jury was properly guided". ***Green***, 284 F.3d at 659. There was no reversible plain error. *See* ***Fiber Sys.***, 470 F.3d at 1158.

Brown next maintains the district court erred in refusing her requested FDCPA instructions. As discussed *supra*, Brown has not established that a reasonable jury could not have found that Morris

9

was not an FDCPA debt collector. Accordingly, Brown's requested instructions, which did not pertain to that threshold determination, "could not have affected the outcome of the case". *Green*, 284 F.3d at 659.

Further, Brown contends the jury should have been instructed that, under Mississippi law, Morris owed her a trustee's heightened duty of care as to all foreclosure-related matters. Brown fails, however, to provide relevant authority for such an instruction.

Finally, Brown asserts the contributory-negligence and mitigation-of-damages instructions were erroneous. These instructions, however, "could not have affected the outcome of the case", *id.*, because the jury found no negligence, or FDCPA or RESPA violations, by defendants.

D.

Brown contends the trial court improperly permitted Morris to testify about settlement discussions, in violation of Federal Rule of Evidence 408. Evidentiary rulings are reviewed for an abuse of discretion. *E.g.*, *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 198 (5th Cir. 2006); *see* FED. R. EVID. 103. An erroneous evidentiary ruling is reversible error only if it affected substantial rights of the complaining party. *E.g.*, *Hodges*, 474 F.3d at 199; *see* FED. R. EVID. 103(a).

Morris' testimony was: "[T]o this day in every discussion I have had with Ms. Brown she has insisted either through her

10

attorneys or personally that she was not going to pay for this house". Brown fails to show its admission affected her substantial rights. The testimony does not refer to settlement discussions. Further, the district court subsequently instructed the jury it was not to consider Morris' reference to statements made through attorneys.

III.

For the foregoing reasons, the judgment is

***AFFIRMED.***