# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-IA-00384-SCT

*HOWARD R. HOLADAY, JR., M.D.*

*v.*

*KYLE MOORE AND MARLA MOORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2013 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | STEPHEN P. KRUGER |
| | THURMAN LAVELLE BOYKIN, III |
| | CRYMES MORGAN PITTMAN |
| | JOSEPH E. ROBERTS, JR. |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | STEPHEN P. KRUGER |
| | THURMAN LAVELLE BOYKIN, III |
| ATTORNEYS FOR APPELLEES: | CRYMES MORGAN PITTMAN |
| | JOSEPH E. ROBERTS, JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 04/30/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Kyle and Marla Moore timely filed a medical malpractice suit against St. Dominic Hospital, Jackson Neurosurgery Clinic, and several physicians, claiming that the physicians and hospital had been negligent in treating Kyle in May 2004. In March 2011, the Moores added Dr. Howard Holaday as a defendant. Dr. Holaday moved for summary judgment, asserting that the two-year statute of limitations had expired. The trial court denied summary

judgment, and Dr. Holaday petitioned this Court for an interlocutory appeal. The issue now before this Court is whether the discovery rule tolled the statute of limitations against Dr. Holaday. We hold that whether the discovery rule tolls the statute of limitations requires a determination by the trier of fact—here, the jury—regarding the "date the alleged act, omission or neglect shall or with reasonable diligence might have been first discovered." Miss. Code Ann. § 15-1-36(2) (Rev. 2012). The trial court, therefore, properly denied summary judgment to Dr. Holaday.

## Facts and Procedural History

¶2.    Kyle Moore went to the emergency room (ER) at St. Dominic Hospital on the morning of May 23, 2004, with pain in his lower back. The ER doctor, Dr. Jeff Hubacek, diagnosed the pain Moore was experiencing as lumbar strain and discharged him around noon. Kyle returned to the ER at 10:00 o'clock that evening complaining of back pain and leg weakness. Dr. Marshall Stout was the ER doctor for that shift. Rather than consulting the orthopaedist on call for the ER, Dr. Stout decided to consult Dr. Greg Wood, an orthopaedic surgeon, because Kyle had an appointment scheduled with Dr. Wood a few days later for the same problem. However, Dr. Holaday, a neurosurgeon, was taking Dr. Wood's calls that night. Dr. Stout spoke with Dr. Holaday and made a note that Dr. Holaday would come to the ER to see Kyle. Dr. Holaday did not appear at the ER, and he maintains that he never agreed to do so because he was out of town. Dr. Stout made two notes about consulting with Dr. Holaday, then ordered an MRI under Dr. Holaday's name.

2

¶3.     The MRI was performed at midnight, and the results showed an epidural abscess. Because Dr. Holaday's name was on the MRI report as the ordering physician, the radiologist contacted him with the results. Dr. Holaday says that, when he was told about the epidural abscess, he recommended that Kyle Moore be transferred to University of Mississippi Medical Center. Dr. Holaday testified that, after he received the MRI results, he had no further involvement with Kyle Moore's treatment. Dr. Stout's shift ended shortly after he had ordered the MRI, and Dr. Karl Hatten replaced him in the ER. Dr. Hatten received Kyle's MRI results and contacted the neurosurgeon on call for the ER, Dr. Adam Lewis with Jackson Neurosurgery Clinic. However, Dr. Jacob Mathis was taking Dr. Lewis's calls that night. Dr. Mathis admitted Moore to the hospital around 3:00 o'clock a.m. on May 24. Kyle Moore needed surgery, but Dr. Mathis deferred the surgery to Dr. Lewis, who operated on the epidural abscess at 9:15 o'clock that morning. The Moores contend that surgery should have been done sooner and that the delay in treatment resulted in neurological injury to Kyle.

¶4.     In considering Dr. Holaday's motion for summary judgment on the statute of limitations issue, the trial court had before it the affidavit of Dr. W. Lynn Stringer. Dr. Stringer wrote that the Moores' attorneys had asked him "to review the medical records and render an opinion as to whether there was a deviation from the standard of care with regard to the neurosurgical treatment received by Kyle Moore." Dr. Stringer reported that, "after speaking with Howard Holaday, M.D., I determined that Dr. Holaday was not negligent and had not deviated from the standard of care." Also before the trial court was an affidavit of Crymes M. Pittman, one of the attorneys of record for the Moores. Pittman wrote that "Dr.

3

Stringer advised that Dr. Howard Holaday, a neurosurgeon who is mentioned in the medical records of Kyle Moore as having been contacted by an emergency room physician, was not negligent." Pittman continued, "Dr. Stringer further advised that Dr. Holaday was not on call and was out of town during the time he was contacted regarding Kyle's condition." Because of the discussion between Dr. Stringer and Dr. Holaday, the Moores and their attorneys concluded that no basis for a claim against Dr. Holaday existed. While the Moores sent notice-of-claim letters to St. Dominic, Jackson Neurosurgery Clinic, and others, they did not name Dr. Holaday in the initial lawsuit.

¶5.     Dr. Holaday was deposed on February 19, 2010. His deposition was consistent with the affidavits of Dr. Stringer and Mr. Pittman. Dr. Holaday testified that he had driven from Jackson, Mississippi, to Carthage, Mississippi, on the afternoon of May 23, 2004. He had planned to return to Jackson that evening, but was *not on call* at St. Dominic Hospital. Dr. Holaday testified that he did not treat Moore on May 23, 2004, and that he was never Moore's treating neurosurgeon.  He stated "I have a vague recollection of getting a phone call or a page while I was in my vehicle there around Carthage." Dr. Holaday understood that "they were calling me because there was no neurosurgeon on call for the emergency room at the time" and said that he had informed the emergency room doctor that he was not on call. Dr. Holaday could not remember whether he had informed the emergency room doctor that he was out of town, but he denied having said that he would come to see the patient. Holaday mentioned that he did have two conversations with treating physicians. With regard to the first, he testified "they were calling to get some guidance as to how to handle a patient like

4

this" and that "I think I told them that this was a patient that needed an emergency MRI, needed additional workup to try to determine a diagnosis, wasn't something that could just be treated expectantly." A second conversation occurred between Dr. Hatten and Dr. Holaday "and [Dr. Hatten] understood that the patient's MRI scan demonstrated an epidural abscess." According to Dr. Holaday, "I recommended that they transfer the patient to University." According to Dr. Holaday, those conversations constituted the extent of his participation in Moore's treatment.

¶6. On July 6, 2010, the Moores deposed Dr. Stout, an emergency room physician who had treated Kyle Moore. Contrary to what Dr. Holaday had testified, Dr. Stout's testimony was that Dr. Holaday was, in fact, on call that evening. Dr. Stout said that he had spoken to Dr. Holaday, who, instead of saying that he was not on call that evening, verified that he was. Dr. Stout said in his deposition that Dr. Holaday had indicated that he was going to come and care for Moore and that "he wanted me [Dr. Stout] to give him [Moore] some pain relief and get the MRI and have him called back with the results." Dr. Stout said that, after ordering the MRI, he had "signed off and told Karl Hatten where we were, that the patient was to go get his MRI and that Dr. Holaday was to be called back with the results . . . ." He testified that Dr. Holaday never mentioned that Moore ought to be transferred to University Medical Center (UMC). Dr. Hatten, who had relieved Dr. Stout of Moore's care on May 23, 2004, also was deposed on July 6, 2010. He testified that, because "I had a neurosurgeon coming to see the patient," it was not necessary to transfer Moore to UMC.[1]

_____

[1]According to Dr. Hatten, the policy of St. Dominic allowed for transfer only if neurological assistance was unavailable: "if [neurological assistance] were to become

¶7.     Dr. Holaday filed his first motion for summary judgment on the ground that there was no evidence that he had violated the appropriate standard of medical care or that he had contributed in any way to Kyle's alleged injuries. The trial court denied summary judgment, holding that questions of fact existed. Dr. Holaday then moved for summary judgment on the ground that the statute of limitations had expired. The trial judge denied the motion for summary judgment, holding that the discovery rule applied, so the statute of limitations had not run or, in the alternative, that the claim was proper under Rule 15 of the Mississippi Rules of Civil Procedure to conform the pleadings to the evidence.

**Standard of Review**

¶8.     This Court reviews the grant or denial of a motion for summary judgment *de novo*. ***Hospital MD, LLC v. Larry***, 138 So. 3d 922, 925 (Miss. 2014).  Summary judgment should be granted if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Miss. R. Civ. P. 56(c).

**Discussion**

¶9.     The discovery rule provides that the two-year statute of limitations for medical malpractice claims begins to run "from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered . . . ." Miss. Code Ann. § 15-1-36(2) (Rev. 2012). While "[t]he operative time is when the patient *can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner*," the discovery

_____

unavailable, then you can initiate a transfer."

6

rule applies only to those "rare cases where the patient is aware of his injury . . . but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury." **Huss v. Gayden**, 991 So. 2d 162, 165-66 (Miss. 2008) (quoting **Smith v. Sanders**, 485 So. 2d 1051, 1052-53 (Miss. 1986)) (emphasis in original).

¶10. This Court has held that "[d]iscovery of an injury 'is an issue of fact to be decided by a jury when there is a genuine dispute.'" **Phillips 66 Co. v. Lofton**, 94 So. 3d 1051, 1059 (Miss. 2012) (quoting **Weathers v. Metropolitan Life Ins. Co.**, 14 So. 3d 688, 692 (Miss. 2009) (quoting **Donald v. Amoco Prod. Co.**, 735 So. 2d 161, 167 (Miss. 1999))). "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and the other party takes the opposite position." **Sutherland v. Estate of Ritter**, 959 So. 2d 1004,1007 (Miss. 2007) (quoting **Price v. Purdue Pharm. Co.**, 920 So. 2d 479, 483 (Miss. 2006) (citing **Am. Legion Ladnier Post No. 42 v. Ocean Springs**, 562 So. 2d 103, 106 (Miss. 1990))).

¶11. Dr. Holaday takes the position that, because his name appeared on various pages of Kyle's medical records and because the Moores knew his identity, the discovery rule did not operate to toll the statute of limitations on their claims against him. But the record is clear that Dr. Holaday's fervent denial of his participation in the events giving rise to the alleged injury led the Moores and their attorney to conclude that no basis for a claim against him existed. This case is not a case like **Sutherland v. Estate of Ritter**, in which this Court held that the discovery rule did not toll the statute of limitations where "Sutherland knew who, when, how, and by what he had been injured soon after receiving treatment" and having been

7

prescribed medication. *Sutherland*, 959 So. 2d at 1009. The Court in that case also pointed out that, "in the medical malpractice context, the discovery rule may apply in cases where the injury is not latent at all, but where the *negligence which caused the known injury is unknown*." *Sutherland*, 959 So. 2d at 1009-10 (emphasis added).

¶12.    The present case is wholly distinguishable from *Sutherland*, in which a patient knew of undesired side effects of the medication prescribed by his treating physician. *Id.* at 1009. In this case, Moore was given to understand, from Dr. Holaday's own discussions with Moore's consultant, Dr. Stringer, that no legitimate medical negligence claim could be brought against Dr. Holaday. Beyond acknowledging a limited consultation with Moore's treating physicians and a recommendation that an MRI be given, Dr. Holaday had denied, both in conversations with Dr. Stringer and in his deposition on February 19, 2010, involvement in Moore's treatment. It was not until July 6, 2010, that the Moores purportedly became aware that Dr. Holaday's involvement in treatment may have been far greater than he initially had related to them. Of course, this is a jury question, as the trial court correctly found.

¶13.    This case is also unlike *Wright v. Quesnel*, 876 So. 2d 362 (Miss. 2004), and *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997 (Miss. 2004). Those cases stand for the proposition that the discovery rule does not operate to toll the statute of limitations even when the plaintiff does "not know with certainty that the conduct was negligent as a matter of law." *Wright*, 876 So. 2d at 367 (quoting *Hayes*, 868 So. 2d at 1001). In *Wright*, the plaintiff's child died in her womb. *Wright*, 876 So. 2d at 367. Her physician, to whom the plaintiff had

"complained of severe pain," failed to "order any type of treatment," but recommended only bed rest. *Id.* at 364, 367. The Court held that she "had enough information at the time of death such that she knew or reasonably should have known that negligence had occurred." *Id.* (quoting *Hayes*, 868 So. 2d at 1001). Likewise, in *Hayes*, the representative of a decedent brought suit on behalf of the decedent's son after a nurse informed her in a "chance meeting" that negligence had occurred. *Hayes*, 868 So. 2d at 1001. Noting that "[t]he record does not reflect any type of investigation into [decedent's] treatment prior to this chance meeting, which occurred approximately two years after her death," we found that the plaintiffs "had enough information such that they knew or reasonably should have known that some negligent conduct had occurred" because "the death certificate included sepsis as one of the causes of death." *Id.*

¶14.    Both *Wright* and *Hayes* are distinguishable from the present case. *Hayes* involved an individual who knew the symptoms she was experiencing and was, under the circumstances, on notice that the doctor may have been negligent in declining to treat her beyond advising bed rest. In *Hayes*, the plaintiff had waited to file suit until a third party suggested that negligence had occurred. Here, Dr. Holaday, unequivocally, both in conversations with Dr. Stringer and in an affidavit, strongly denied involvement in Moore's treatment, though he said that he vaguely recalled recommending an MRI. It was on this basis that Moore and his attorney decided that there was no claim to be made against Dr. Holaday. Indeed, Dr. Holaday maintains on appeal that Moore's medical records were *incorrect*: "Dr. Stout documented his discussion with Dr. Holaday, *erroneously indicating* that Dr. Holaday had

9

agreed to come to the ER to see Mr. Moore." He claims that "Dr. Stout ordered MRIs under Dr. Holaday's name, leading the radiologist to contact Dr. Holaday with the results." He "maintains [1] he repeatedly advised that he was not the neurosurgeon on call for St. Dominic's ER that evening and [2] when the epidural abscess was reported to him, he suggested Mr. Moore be transferred to University of Mississippi Medical Center."

¶15.    Here, the depositions of Drs. Stout and Hatten created a genuine issue of material fact regarding the point at which the Moores had notice of potential claims against Dr. Holaday. The Moores may have become aware that Dr. Holaday's version of events was contradicted only when Drs. Stout and Hatten were deposed on July 6, 2010. The Moores and their attorney appear to have investigated diligently, going to the extraordinary length of having their pre-suit medical consultant actually conduct an investigation, concluding that, based on Dr. Holaday's representations, no viable medical negligence claims against Dr. Holaday were present. It remains a question for the jury whether the plaintiffs had reason to know, based solely on the appearance of Dr. Holaday's name in Kyle Moore's medical records, of potential medical negligence claims against Dr. Holaday or whether those claims remained concealed until Drs. Stout and Hatten were deposed on July 6, 2010.[2]

_____

[2] Indeed, had the Moores filed suit against Dr. Holaday prior to the depositions of Drs. Stout and Hatten, they may have subjected themselves to Rule 11 sanctions under our Mississippi Rules of Civil Procedure.

> If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or dely, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorney fees.

¶16.    We concur in the judgment of the Circuit Court of the First Judicial District of Hinds County, which correctly denied summary judgment: "there is a genuine issue of material fact regarding the treatment of Plaintiff Kyle Moore on May 23, 2004. Specifically, a genuine issue of material fact remains on the question of whether Dr. Holaday treated Mr. Moore, or participated in his treatment. There is converse deposition testimony from two physicians on this issue."[3] The divergent deposition testimony of the experts creates a factual question which must be resolved by the jury.

¶17.    Further, Mississippi Code Section 15-1-67 provides that:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud be, or with reasonable diligence, might have been, first known or discovered.

Miss. Code Ann. § 15-1-67 (Rev. 2012). This Court has held that "[f]raudulent concealment of a cause of action tolls its statute of limitations" and "[t]he fraudulent concealment doctrine 'applies to any cause of action.'" *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000) (citations omitted). This Court has laid out a two-part test for determining the existence of a fraudulent concealment claim, and has laid upon the party claiming fraudulent concealment

---

Miss. R. Civ. P. 11(b). Dr. Holaday's conversations with Dr. Stringer and his February 19, 2010, deposition testimony tended to relieve him of potential liability, because he asserted that those records were erroneous, a position he maintains on appeal.

[3]Finding dispositive and correct the trial court's ruling that the discovery rule had tolled the statute of limitations, because a genuine issue of material fact existed regarding Dr. Holaday's participation, we decline to address the trial court's alternative ruling that our Mississippi Rule of Civil Procedure 15(b) allowed the Moores to add Dr. Holaday as an amendment to conform to the evidence.

the burden of showing that: "(1) some affirmative act or conduct was done and prevented discovery of a claim, and [that] (2) [ . . . ] due diligence was performed on their part to discover it." *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007) (quoting *Stephens v. Equitable Life Assurance Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003)). "Both are questions of fact, not law, and should be left to a jury for determination." *Whitaker v. Limeco Corp.*, 32 So. 3d 429, 436 (Miss. 2010) (citing *Robinson*, 763 So. 2d at 888-89).

¶18.    If Drs. Stout and Hatten were telling the truth, then Dr. Holaday's statements denying involvement may have been untruthful. Again, this remains a question for the jury. His denial of participation in Moore's treatment and his assertion that Moore's medical records were erroneous could constitute "some affirmative act or conduct [which] was done and prevented discovery of a claim." *Channel*, 954 So. 2d at 423 (quoting *Stephens*, 850 So. 2d at 84). If Dr. Holaday misrepresented relevant facts, he thereby affirmatively concealed his involvement and gave rise to a *bona fide* belief in the Moores that no claims against him existed. Whether the Moores and their attorney performed the requisite due diligence by hiring a neurosurgeon, Dr. Stringer, to contact Dr. Holaday and to investigate the existence of a claim against him, constitutes a question for the jury. *Whitaker*, 32 So. 3d at 436. The Moores aver that Dr. Holaday's conversation with Dr. Stringer formed the basis for their initial determination that no viable medical negligence claims could be made against Dr. Holaday. If the jury were to decide thusly, then the *potential* for fraudulent concealment ought to have tolled the statute of limitations until July 6, 2010, when the Moores learned that an issue of fact existed regarding Dr. Holaday's involvement.

12

**Conclusion**

¶19. Dismissing this case at the summary judgment stage potentially allows Dr. Holaday to deny any involvement in Moore's care and then hide behind the statute of limitations when the Moores discovered that he may have lied. A jury ought to be permitted to assess the credibility of Dr. Holaday and Drs. Stout and Hatten for the purpose of discerning the truth. Whether Dr. Holaday is lying is a genuine issue of material fact for the jury to determine. We therefore affirm the judgment of the Circuit Court of the First Judicial District of Hinds County denying summary judgment to Dr. Holaday.

¶20. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., CHANDLER AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., LAMAR AND PIERCE, JJ.**

**COLEMAN, JUSTICE, DISSENTING:**

¶21. The trial judge denied Dr. Holaday's motion for summary judgment on the basis that the discovery rule applied or, in the alternative, because the Moores' amended complaint was proper under Mississippi Rule of Civil Procedure 15. In my opinion, the Moores' amended complaint lacked viability under both the discovery rule and Rule 15. Therefore, respectfully, I dissent.

**A. Discovery Rule**

¶22. The statute of limitations for medical malpractice claims is two years. Miss. Code Ann. § 15-1-36(2) (Rev. 2012). Under the "discovery rule," the two-year statute of limitations begins to run "from the date the alleged act, omission or neglect shall or with

13

reasonable diligence might have been first known or discovered," but medical malpractice claims cannot be brought in any event "more than seven (7) years after the alleged act, omission or neglect occurred." *Id.* The discovery rule tolls the statute of limitations for (1) latent injuries or (2) nonlatent injuries where the negligence that caused the injury is not known. *See Huss v. Gayden*, 991 So. 2d 162, 165-66 (¶ 5) (Miss. 2008); *Sutherland v. Estate of Ritter*, 959 So. 2d 1004, 1008-09 (¶ 12) (Miss. 2007).

¶23. The emphasis is on "reasonable diligence" – when the plaintiff, "exercising reasonable diligence, should have first discovered" the injury or the negligence. *Huss*, 991 So. 2d at 165 (¶ 5) (quoting *Sutherland*, 959 So. 2d at 1008 (¶ 12)). The Court has held that, under the "discovery rule," the central inquiry is:

> the time that the patient discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury. The operative time is when the patient *can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the medical practitioner.*
>
> There may be rare cases where the patient is aware of his injury prior to the two years immediately preceding the filing of his claim, but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

*Huss*, 991 So. 2d at 165-66 (¶ 5) (quoting *Smith v. Sanders*, 485 So. 2d 1051, 1052 (Miss. 1986)). The discovery rule will not be applied where the plaintiff has failed to exercise reasonable diligence. *Huss*, 991 So. 2d at 167 (¶ 9) (citing *Wright v. Quesnel*, 876 So. 2d 362, 367 (Miss. 2004); *Wayne Gen. Hosp. v. Hayes*, 868 So. 2d 997, 1001 (Miss. 2004)). Further, "an individual may not take shelter in the 'discovery rule' when reasonable minds

could not differ that the plaintiff *possessed sufficient information to bring a claim.*" **Huss**, 991 So. 2d at 167 (¶ 9) (emphasis added).

¶24.    In **Sutherland v. Estate of Ritter**, the plaintiff knew soon after being prescribed a medication that it caused undesirable side effects. **Sutherland**, 959 So. 2d at 1009 (¶ 15). However, he continued taking the drug for two years, until he checked himself into the hospital and stopped taking the medication at another doctor's direction. **Id.** at 1005-06 (¶ 2). Nearly three years later, he sent a notice-of-claim letter to the prescribing physician. **Id.** at 1006 (¶ 5). The Court held that "Sutherland knew who, when, how, and by what he had been injured" soon after being prescribed the medication. **Id.** at 1009 (¶ 15). He knew that the medication was causing his problems and he knew which doctor had prescribed it; therefore, the discovery rule did not toll the statute of limitations, and it had expired by the time Sutherland filed suit. **Id.** at 1010 (¶ 17). When the plaintiff has enough information at the time of the injury to know that negligence occurred, even if he does "not know with certainty that the conduct was negligent as a matter of law," the discovery rule will not toll the statute of limitations. **Wright**, 876 So. 2d at 367 (¶ 12); **Hayes**, 868 So. 2d at 1001 (¶ 17).

¶25.    In the case *sub judice*, not only is the injury not latent, but the alleged cause of the injury and the identity of the individuals involved have been known since 2004. The Moores began collecting Kyle's medical records just days after his surgery in May 2004, and Dr. Holaday's name was on several pages of the records. The medical records, standing alone, put the Moores on notice that Dr. Holaday may have told Dr. Stout he would report to the ER

15

to see Kyle. Then, the Moores' pre-suit investigation of the claim revealed contradictory information, *i.e.*, Dr. Holaday's denial of treatment and denial that he was on call.

¶26. The Moores complied with the pre-suit investigation requirement of Mississippi Code Section 11-158(1)(a) and employed Dr. Stringer to review Kyle's medical records.[4] As part of Dr. Stringer's pre-suit investigation, he spoke with Dr. Holaday. A report from Dr. Stringer is not in the record, but he could have spoken with any or all of the doctors identified in Kyle's medical records. Thus, any discrepancies in Dr. Holaday's and Dr. Stout's recollection of the events reasonably could have been discovered during the pre-suit investigation. Certainly, the discrepancy in Dr. Holaday's own recollection and Dr. Stout's notation in the file was known at that time. In fact, in opposing Dr. Hubacek's motion to amend his answer regarding Dr. Holaday's involvement, the Moores specifically asserted *that Dr. Holaday's involvement had been known from Kyle's medical records and that Dr. Stout's deposition did not reveal any new information*.[5]

---

[4] Mississippi Code Section 11-1-58 requires an attorney filing a medical malpractice suit to consult with an expert "qualified to give expert testimony as to standard of care or negligence and who the attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action . . . ." Miss. Code Ann. § 11-1-58(1)(a) (Rev. 2014).

[5] Following Dr. Stout's deposition, Dr. Hubacek attempted to amend his answer to assert a new defense related to Dr. Holaday's alleged involvement. The Moores *opposed* Dr. Hubacek's motion to amend his answer, *claiming that it was untimely and that Dr. Stout's deposition did not reveal any new information*. Dr. Hubacek withdrew his request to amend his answer, but the Moores filed an amended complaint naming Dr. Holaday as a defendant. The Moores wrote that they had no option but to add Dr. Holaday, because Dr. Hubacek intended to present evidence at trial that Dr. Holaday was negligent.

Dr. Holaday moved for summary judgment on the ground that there was no evidence that he had violated the appropriate standard of medical care or that he had contributed in any way to Kyle's alleged injuries. The Moores filed a motion for partial summary judgment *on the same ground*. The other defendants opposed the motions, and the trial court denied

¶27.	Contrary to the trial court's findings (but consistent with the Moores' earlier representation), Dr. Stout's deposition did not reveal any new information. The instant case is not one of the "rare cases" in which the patient "could not have discovered with reasonable diligence" Dr. Holaday's involvement – or the discrepancies regarding his alleged involvement – such that the discovery rule would have tolled the statute of limitations. The pertinent question is not whether the Moores knew exactly which set of facts – Dr. Holaday's representations to their expert or the information contained in the medical records – was true. The pertinent question is whether the Moores had enough information to know *they had a claim*. **Huss**, 991 So. 2d at 167 (¶ 9).

¶28.	While I agree that it appears harsh to apply the statute of limitations to bar the Moores' claims after they made a good faith attempt to accurately investigate their claims before filing suit, my understanding of the pertinent law will allow me to reach no other result. The conflicting facts available to the Moores from the two sources – the medical records and Dr. Holaday's interview with their expert – gave rise to a dispute of material facts that in turn gave rise to a claim needing resolution through the litigation process. Harsh though it may be, in the instant case, the Moores chose to believe one set of facts over the other rather than vetting the dispute through the discovery process and a finder of fact at trial at their own peril.

---

summary judgment. Dr. Holaday then moved for summary judgment on the ground that the statute of limitations had expired. The other defendants did not oppose summary judgment on that ground. But the Moores *opposed summary judgment, arguing that the statute of limitations had not expired*, although they made the opposite argument when Dr. Hubacek tried to bring Dr. Holaday into the suit.

**B. Mississippi Rule of Civil Procedure 15**

¶29.    The trial judge wrote that, in the alternative to the discovery rule, adding Dr. Holaday as a defendant was proper under Mississippi Rule of Civil Procedure 15 as an amendment to conform to the evidence.  Adding a defendant is not an "amendment to conform to the evidence" as allowed by Rule 15(b).  The plain language of that rule refers to amendments related to "issues" not raised in the pleadings that arose and were tried by consent of the parties at trial; it does not refer to parties who were not named in the pleadings.  Miss. R. Civ. P. 15(b).  *See also* **Webb v. Braswell**, 930 So. 2d 387, 394 (¶ 10) (Miss. 2006).  Rule 15(b) is not applicable to Dr. Holaday being added as a defendant.

¶30.    While Rule 15(b) does not apply to amending pleadings to add parties, the "relation back rule" of Rule 15(c) does apply to new parties.  The judge seemingly combined the "amendment to conform to the evidence" rule of subpart (b) and the "relation back" rule of subpart (c).  However, neither subpart is applicable.  Rule 15(c) provides:

> **(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by Rule 4(h) for service of the summons and complaint, the party to be brought in by amendment:

> (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining the party's defense on the merits, and

> (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. An amendment pursuant to Rule 9(h) is not an amendment changing the party against whom a claim is asserted and such amendment relates back to the date of the original pleading.

18

Miss. R. Civ. P. 15(c). First, Rule 4(h) requires the plaintiff to serve a defendant with the summons and complaint within 120 days of filing the complaint. The Moores did not serve Dr. Holaday within 120 days of filing the complaint. Second, there was no mistake in identity; the Moores knew of Dr. Holaday's involvement and chose not to bring a claim against him.

¶31. Finally, Rule 9(h) does not apply because it is applicable only if the plaintiff "is ignorant of the name of an opposing party and so alleges in his pleading," then later discovers the proper party's name and substitutes the correct name. Miss. R. Civ. P. 9(h). The Moores' original complaint named "John Does 1-5" and provided that names would be substituted when their identities were known. However, the amended complaint still named "John Does 1-5" and included the same statement. The Moores did not substitute Dr. Holaday's name for a "John Doe." The addition of a new party is "not a proper substitution under Rule 9(h)." *Miller ex rel. Miller v. Engelhard Corp.*, 95 So. 3d 740, 743-44 (¶ 11) (Miss. Ct. App. 2012) (discussing *Doe v. Miss. Blood Servs., Inc.*, 704 So. 2d 1016, 1018 (Miss. 1997)). "[I]f one joins a new party without meeting the requirements set forth in [Rule] 9(h), the new party must be served prior to the running of the statute of limitations." *Doe*, 704 So. 2d at 1018 (¶ 9). The Moores did not serve Dr. Holaday before the statute of limitations ran. The trial judge erred in holding that the Moores' amended complaint naming Dr. Holaday was proper under Rule 15 as an "amendment to conform to the evidence."

¶32. The statute of limitations as to Dr. Holaday ran on May 24, 2006, and had long expired by March 13, 2011, when the Moores filed their amended complaint. Neither the

19

discovery rule nor Rule 15 applies to give the Moores any relief.  Therefore, I would reverse the trial court's denial of Dr. Holaday's motion for summary judgment.

**RANDOLPH, P.J., LAMAR AND PIERCE, JJ., JOIN THIS OPINION.**