# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00724-SCT

*SHIRLEY ADAMS, INDIVIDUALLY AND AS
SURVIVOR AND ONLY HEIR OF DOROTHY
TURNER, DECEASED*

*v.*

*GRACELAND CARE CENTER OF OXFORD, LLC,
GRACELAND MANAGEMENT COMPANY, INC.,
LAFAYETTE LTC, INC., AND YALOBUSHA
GENERAL HOSPITAL AND NURSING HOME*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/04/2013 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BOBBY FLOYD MARTIN, JR. |
| ATTORNEYS FOR APPELLEES: | ANDY LOWRY |
| | THOMAS L. KIRKLAND, JR. |
| | JOHN G. WHEELER |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED - 01/19/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The Lafayette County Circuit Court granted summary judgment in favor of Graceland

Care Center of Oxford, LLC; Graceland Management Company, Inc.; Lafayette LTC, Inc.;

and Yalobusha General Hospital and Nursing Home (collectively, Graceland) in a case brought by Shirley Adams for injuries her mother allegedly sustained while in the defendants' care. As the basis for granting summary judgment, the circuit court determined that Adams was judicially estopped from bringing her suit because Adams had failed to disclose the suit in her prior bankruptcy proceedings. Adams appealed, and the Court of Appeals, in a plurality opinion, reversed the circuit court's decision to grant summary judgment and remanded the case to the circuit court to proceed with a trial on the merits. We granted certiorari review and hold that the Court of Appeals misapprehended the applicable standard of review and the law of judicial estoppel in the instant case. Therefore, we reverse the Court of Appeals' judgment, and we reinstate and affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. Dorothy Turner was a resident at Graceland's nursing home facilities for several years. Her daughter, Adams, became concerned with Turner's care and treatment at the facilities, and according to Adams's deposition, she first contacted an attorney about a possible lawsuit in 2004 or 2005. For whatever reason, Adams did not pursue a suit at that time. However, Turner died in December 2007, and Adams filed suit against Graceland in May 2008.

¶3. During Adams's deposition in August 2009, counsel for Graceland discovered that in August 2004, Adams had filed for Chapter 13 bankruptcy. Adams's bankruptcy was fully discharged on March 31, 2009; however, in spite of her filing suit almost a year prior to her

2

discharge, Adams did not inform the bankruptcy court of her suit nor did she amend her bankruptcy schedules to include the suit.

¶4.    Upon learning of her prior bankruptcy and her failure to include the suit in her schedules prior to discharge, Graceland moved for summary judgment based on the doctrine of judicial estoppel.  Adams filed a petition to reopen her bankruptcy proceeding and amend her schedules to list the suit as exempt personal property.  The bankruptcy trustee objected to the classification of the suit as exempt personal property, and the bankruptcy court agreed and sustained the objection.  Ultimately, Adams did amend her schedules to include the suit.

¶5.    The circuit court initially noted by letter that it would grant Graceland's motion for summary judgment; however, following our opinion in ***Copiah County v. Oliver***, 51 So. 3d 205, 207 (¶ 12) (Miss. 2011), the circuit court entered an order staying the proceeding for the bankruptcy court to determine whether Adams had a duty to disclose her suit as an asset of her bankruptcy estate.  The bankruptcy court's opinion was that "Adams had a continuing duty throughout the pendency of her bankruptcy case to disclose the state law cause of action."  ***In re Adams***, 481 B.R. 854, 859 (Bankr. N.D. Miss. 2012).  Additionally, the bankruptcy trustee submitted a letter, at the bankruptcy court's request, indicating that it would not administer payment of any of the settlement/judgment proceeds to the unsecured creditors that remained at discharge.[1]

---

[1]"After reviewing the timely filed and allowed general unsecured claims which total $4,719.53, the trustee reports that she would abandon any settlement or judgment proceeds and not administer the payment of such on behalf of the bankruptcy estate."

¶6. Ultimately, the circuit court granted Graceland's renewed motion for summary judgment based on the doctrine of judicial estoppel. Adams appealed, and the Court of Appeals rendered its decision in October 2015. In the plurality opinion reversing the grant of summary judgment and remanding the case to the circuit court for trial, the Court of Appeals concluded that the circuit court had erred in applying judicial estoppel because Adams did not "knowingly" take inconsistent positions in the circuit court and bankruptcy court, nor did she, viewing the evidence "in the light most favorably to Adams, . . . intend[] to conceal her claim from the bankruptcy court in order to reap a windfall by preventing her creditors from recovering any proceeds from a potential judgment." *Adams v. Graceland Care Ctr. of Oxford, LLC, et al.*, 2015 WL 6685213, *6 (¶¶ 21-22) (Miss. Ct. App. Nov. 3, 2015). Following the Court of Appeals' denial of Graceland's motion for rehearing, Graceland filed its petition for certiorari review, which we granted.

## ANALYSIS

¶7. In its petition for certiorari review, Graceland raises three issues. First, Graceland asserts that the Court of Appeals' opinion "usurped the trial court's discretion by imposing the wrong standard of review." Next, Graceland claims that the Court of Appeals' opinion "misapplies the law of judicial estoppel."[2]

### I. Standard of Review

---

[2] Graceland argues that the Court of Appeals' opinion "turns judicial estoppel into 'jury estoppel' and invites forum-shopping"; however, we decline to address it based on our holdings on the other issues raised.

4

¶8.   According to Graceland, the Court of Appeals' opinion erred by utilizing a de novo review of the circuit court's application of judicial estoppel instead of an abuse of discretion standard of review. We agree that the Court of Appeals conflated the standards of review in the present case, because it appears that the Court of Appeals attempted to apply a de novo review to both the application of judicial estoppel and the grant of summary judgment.[3]

¶9.   It is well-settled that appellate review of the trial court's grant or denial of a motion for summary judgment requires the application of de novo review. *Copiah Cty. v. Oliver*, 51 So. 3d 205, 207 (¶ 7) (Miss. 2011) (citing *Monsanto v. Hall*, 912 So. 2d 134,136 (Miss. 2005)). Similarly settled is the standard of review applied to a trial court's application of judicial estoppel, which is the abuse of discretion standard. *Kirk v. Pope*, 973 So. 2d 981, 986 (¶ 11) (Miss. 2007) (citing *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F. 3d 330, 334 (5th Cir. 2004)).

¶10.   The Court of Appeals' decision implied that, under *Oliver*, a new standard of review – de novo – is applied to cases involving a trial court's grant of summary judgment based on judicial estoppel. However, that simply is not the case, and our opinion in *Oliver* does no such thing. As the dissent in the Court of Appeals' opinion pointed out, our opinion in *Oliver* "did not review the merits of the trial court's application of the doctrine of judicial estoppel." *Adams*, 2015 WL 6685213, at *7 (¶ 26) (Wilson, J., dissenting). We merely stated that the standard of review for summary judgment is de novo and that the trial court's

---

[3] In the parties' briefs, neither argued that the application of judicial estoppel should receive a de novo review. Additionally, the Court of Appeals' opinion initially cites the abuse of discretion standard as the appropriate standard before applying a de novo standard.

denial of summary judgment under the de novo standard was appropriate because the bankruptcy court needed an "opportunity to consider whether Oliver had a duty to disclose her post-petition, post-confirmation claim" before the trial court could determine whether judicial estoppel even applied. *Oliver*, 51 So. 3d at 207 (¶¶ 7, 11-12).

¶11. ***Gibson v. Williams, Williams & Montgomery, P.A.***, 183 So. 3d 836 (Miss. 2016), upon which the dissent by Justice Kitchens largely relies, does nothing to contradict our holding. The ***Gibson*** Court did not separately address the standard of review for the application of judicial estoppel; in other words, although it clearly acknowledged the de novo standard of review applicable to summary judgment, the ***Gibson*** Court does not tell us whether it applied a de novo or abuse of discretion standard to the issue of judicial estoppel. *Id.* at 846-847 (¶¶ 24-30). Accordingly, we respectfully disagree with Justice Kitchens's assumption that the ***Gibson*** Court applied a de novo standard of review when it discussed judicial estoppel. (Kitchens Dis. at ¶ 32). Although the ***Gibson*** Court does not tell its readers why it omitted any discussion of the standard of review, it may well be because it was not reviewing anything but, rather, considering an alternative argument advanced on appeal. According to the ***Gibson*** opinion, the trial judge did not base the decision there under review on judicial estoppel and appears to have made no determination, one way or the other, regarding its application. *Id.* at 842 (¶ 12). Rather, the trial judge there granted summary judgment based on the application of collateral estoppel. *Id.*

¶12. Therefore, the appropriate analysis requires an appellate court to use the abuse of discretion standard to review the trial court's determination that judicial estoppel is or is not

applicable. Then, an appellate court would use the de novo standard to determine whether summary judgment was or was not appropriate. We hold that the Court of Appeals erred when it applied an incorrect standard of review in its review of the present case. Because the Court of Appeals applied an incorrect standard of review, we now address whether the circuit court properly applied judicial estoppel and whether summary judgment was appropriate, using the appropriate standards of review for each issue.

## II.    Judicial Estoppel

¶13.    As explained above, we review the circuit court's application of judicial estoppel using the abuse of discretion standard. "Our inquiry is limited to whether the trial judge abused his discretion; we may not rule on whether he was 'right' or 'wrong' in our view. And, unless the trial court based its decision on an erroneous review of law, . . . this Court is not authorized to reverse for an abuse of discretion unless we find it was 'arbitrary and clearly erroneous.'" *Detroit Marine Eng'g v. McRee*, 510 So. 2d 462, 467 (Miss. 1987) (citations omitted).

¶14.    Judicial estoppel operates to protect the integrity of the judicial system. *Gibson*, 186 So. 3d at 847 (¶ 24). It has three elements, and "[a] party will be judicially estopped from taking a subsequent position if (1) the position is inconsistent with one previously taken during litigation, (2) a court accepted the previous position, and (3) the party did not inadvertently take the inconsistent positions." *Clark v. Neese*, 131 So. 3d 556, 560 (¶ 16) (Miss. 2013) (citing *Kirk*, 973 So. 2d at 991 (¶ 32)). Further, "[a] debtor's non-disclosure

7

is 'inadvertent only when, in general, the debtor either lacks knowledge of the undisclosed claim or has no motive for their concealment.'" **Kirk**, 973 So. 2d at 991 (¶ 35).

¶15. The circuit court heard arguments on the application of judicial estoppel to the present case, and it concluded that Adams's failure to inform the bankruptcy court of her cause of action was not inadvertent. The circuit court explained that, based on Adams's own testimony and affidavit, "she had knowledge of the facts supporting her cause of action prior to the discharge of her Chapter 13 proceeding." The circuit court had all of the contradictory evidence in front of it regarding Adams's claims that her failure to amend her bankruptcy schedules was unintentional, due to a lack of knowledge of the law, and ultimately, in her opinion, inadvertent. Weighing on the other side was the bankruptcy court's holding that Adams had a continuing duty to update her bankruptcy schedules, that Adams began investigating a claim about her mother's care years before her mother died and suit was filed, that Adams amended her bankruptcy schedules only after Graceland filed its motion to dismiss; and that Adams is the sole beneficiary of her mother and the suit.

¶16. In looking at the elements of judicial estoppel and the facts as presented to the circuit court, it is evident to the Court that the circuit court did not err in finding Adams judicially estopped from bringing her suit. First, the bankruptcy court's holding that Adams had a continuing duty to update her bankruptcy schedules, which she did not do, helps satisfy the first element of judicial estoppel that Adams has taken inconsistent positions. Next, the bankruptcy court accepting the original bankruptcy schedules and then discharging Adams under the original schedules without the lawsuit listed satisfies the second element of judicial

estoppel that a court accepted Adams's previous position. Additionally, Adams's attempt to amend her bankruptcy schedules after Graceland filed the motion for summary judgment does not cure the fact that the bankruptcy court relied on her position. "Allowing the debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." *Love v. Tyson Foods Inc.*, 677 F. 3d 258, 262 (5th Cir. 2012) (citation omitted). The final element is whether Adams did not inadvertently take the inconsistent positions. As the circuit court explained in its judgment, Adams certainly had "knowledge of the facts supporting her cause of action prior to the discharge of her Chapter 13 proceeding." Further, it is obvious that Adams had a motive to conceal the claim, as she is the sole beneficiary of her suit and her mother's estate. *See id.* ("'[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.' Similarly, this court has found that debtors had a motivation to conceal where they stood to 'reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors.'") (Internal citations omitted.)

¶17. In dissents, Presiding Justice Dickinson and Justice Kitchens both attempt to create an issue of fact by citing Adams's affidavit in which she averred that she was distracted by the treatment of her mother to the point that it did not occur to her to update her bankruptcy schedules. We must in the summary judgment take such averments as true, but even taken

9

as true, they do not change the result. In the context of judicial estoppel, distraction and forgetfulness do not suffice to show inadvertence. As noted above, "A debtor's non-disclosure is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Kirk*, 973 So. 2d at 991 (¶ 35). Neither applies to Adams here, however good a reason she may have had for her distraction. The trial court correctly found, based on undisputed facts, that she had both knowledge of her claim and a motive for concealing it. By law, her failure to disclose the asset on her bankruptcy schedules could not have been inadvertent, no matter if she was distracted.

¶18. Presiding Justice Dickinson contends that Adams has created an issue of material fact as to motive with her above-described affidavit. Yet we do not, as he accuses, affirm summary judgment despite the existence of a disputed issue of material fact. Rather, we take the facts averred by Adams in her affidavit as true, but in the end hold them to be immaterial given the law. *See Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 338 (¶ 27) (Miss. 2013) ("To survive summary judgment, it is not enough that disputed facts exist—such facts must also be material.")

¶19. In *In re Superior Crewboats, Inc.*, 374 F. 3d 330 (5th Cir. 2004), the United States Court of Appeals for the Fifth Circuit reversed the district court's refusal to apply the doctrine of judicial estoppel due to the debtors' failure to disclose a personal injury claim to the bankruptcy court. Like Adams, the plaintiffs in *Superior Crewboats* claimed that their failure to report the injury claim resulted from confusion – in their case over what law applied to their personal injury claim. *Id.* at 335. The Fifth Circuit held that the plaintiffs'

10

alleged confusion was "of no moment." *Id.* The **Superior Crewboats** Court went on to write that the debtors' confusion did "not evince a lack of knowledge as to the existence of the claim." *Id.* Accordingly, the Fifth Circuit reversed the district court, which had found that the debtors created an issue of material fact when they claimed that their confusion caused them to fail to report the claim. *Id.* Then, the Fifth Circuit proceeded to do exactly what we do above – and what Presiding Justice Dickinson would take us to task for doing – by holding that the debtors indeed had a motive by writing as follows:

> The Hudspeaths had the requisite motivation to conceal the claim as they would certainly reap a windfall had they been able to recover on the undisclosed claim without having disclosed it to the creditors. Such a result would permit debtors to "[c]onceal their claims; get rid of [their] creditors on the cheap, and start over with a bundle of rights." *Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993).

*In re Superior Crewboats, Inc.*, 374 F.3d at 336.

¶20. In *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), the Eleventh Circuit also rejected a claim by the debtor that the failure to report a claim in bankruptcy resulted from inadvertent error. *Id.* at 1286-1287. The **Burnes** Court held that, despite the debtor's claims of inadvertence and, accordingly, lack of motive, "deliberate or intentional manipulation can be inferred from the record." *Id.* at 1287. In the case *sub judice*, the trial judge did just that in exercising his discretion in applying the doctrine of judicial estoppel. "[T]he importance of full and honest disclosure [of assets in bankruptcy] cannot be overstated." *Id.* at 1286. The efficacy of federal bankruptcy proceedings, including fairness to creditors, relies on such full and honest disclosure. Accordingly, we consider persuasive

11

the federal authorities cited above, that infer motive from the circumstances of the record even in the face of claims of inadvertence by debtors.

¶21.    "Judicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Sols., Inc.*, 412 F. 3d 598, 600 (5th Cir. 2005). Therefore, based on our review of the record and our standard of review, we hold that the circuit court's decision has support in the evidence and our precedent, and we decline to hold that the circuit court abused its discretion in concluding that Adams was judicially estopped from bringing her suit.

### III.    Summary Judgment

¶22.    Mississippi Rule of Civil Procedure 56(c) provides that, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" then "[t]he judgment sought shall be rendered forthwith[.]" "The evidence must be viewed in the light most favorable to the party against whom the motion has been made." *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001) (quoting *Heigle v. Heigle*, 771 So. 2d 341, 345 (¶8) (Miss. 2000)).

¶23.    In light of our determination that the circuit court did not err in finding Adams judicially estopped from pursuing her suit, we cannot hold that any genuine issue of material fact exists for which Adams could defeat summary judgment. Therefore, the circuit court's grant of summary judgment was appropriate.

12

## CONCLUSION

¶24. The proper standard of review for reviewing a trial court's imposition of judicial estoppel is the abuse of discretion standard, and the proper standard of review for reviewing a trial court's decision to grant or deny summary judgment is de novo. Because the Court of Appeals erroneously applied a de novo review to the circuit court's imposition of judicial estoppel, we reverse the judgment of the Court of Appeals, and we reinstate and affirm the judgment of the circuit court.

¶25. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND KING, J. MAXWELL, J., NOT PARTICIPATING.**

**DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶26. I join Justice Kitchens's well-reasoned dissent. But I am compelled to write separately to address the majority's troubling conclusion that, for the first time in this Court's history, a disputed fact question does not doom summary judgment, but rather is to be decided by the trial court and reviewed for an abuse of discretion. Because Shirley Adams created a disputed question of material fact when she swore she did not know she was supposed to list her lawsuit in bankruptcy, summary judgment is inappropriate.

¶27. The majority claims that both Justice Kitchens and I are attempting "to create an issue of fact by citing Adams's affidavit in which she averred that she was distracted by the

13

treatment of her mother to the point that it did not occur to her to update her bankruptcy schedules." Not so. I do not suggest Adams created a genuine issue of material fact by claiming mere distraction. Instead, Adams created a genuine issue of material fact when she swore in her affidavit: "I had no idea that I was supposed to change my bankruptcy to show the lawsuit." The majority never addresses this statement.

¶28. The majority correctly points out that in *In re Superior Crewboats, Inc.*, the United States Court of Appeals for the Fifth Circuit applied judicial estoppel to bar a suit that had not been disclosed in bankruptcy proceedings. But the majority fails to disclose that the Fifth Circuit specifically noted that the plaintiffs "were aware of . . . their continuing obligation to disclose its existence to the court."[4] Here, Adams's affidavit refutes that she possessed that knowledge. And, if Adams is telling the truth—and we are supposed to accept her statement as true[5]—I would have thought it obvious that she had no motive to conceal her lawsuit from the bankruptcy court until she learned she was obligated to disclose it. I challenge the majority logically to explain how one can possess a motive to withhold disclosure of information that person is unaware of any obligation to disclose.

¶29. One cannot reach the majority's conclusion without resolving the disputed fact question as to whether Adams was aware she had to disclose this suit in her bankruptcy filings. In her affidavit, she swears she was unaware of this and that should defeat summary judgment. I predict the majority's decision to impose upon circuit judges the duty to judge

---

[4] *In re Superior Crewboats, Inc.*, 374 F. 3d 330, 335 (5th Cir. 2004).

[5] Miss. R. Civ. P. 56.

14

the credibility of affidavits filed in opposition to motions for summary judgment, will come as a curiosity to the Bar and an unpleasant surprise to the Bench.

**KITCHENS AND KING, JJ., JOIN THIS OPINION**.

**KITCHENS, JUSTICE, DISSENTING:**

¶30. Because the trial court erred in granting summary judgment to Graceland on the basis of judicial estoppel, I respectfully dissent.

¶31. With regard to the standard of review, the majority holds that "the appropriate analysis requires an appellate court to use the abuse of discretion standard to review the trial court's determination that judicial estoppel is or is not applicable" and "[t]hen, the appellate court would use the de novo standard to determine whether summary judgment was or was not appropriate." Maj. Op. ¶ 12. The majority bases its holding that judicial estoppel is reviewed for an abuse of discretion on *Kirk v. Pope*, 973 So. 2d 981, 986 (Miss. 2007) (citing *Superior Crewboats, Inc. v. Primary P & I Underwriters*, 374 F.3d 330, 334 (5th Cir. 2004)). But in *Kirk*, this Court was reviewing a motion for relief from judgment, filed pursuant to Rule 60(b) of the Mississippi Rules of Civil Procedure, through which the defendant had asserted judicial estoppel. *Kirk*, 973 So. 2d at 986. A Rule 60(b) motion is reviewed for abuse of discretion. *Kirk*, 973 So. 2d at 986 (citing *Hartford Underwriters Ins. Co. v. Williams*, 936 So. 2d 888, 892 (Miss. 2006)).

¶32. Here, the defendants asserted judicial estoppel through a motion for summary judgment, filed pursuant to Rule 56 of the Mississippi Rules of Civil Procedure. When reviewing a trial court's grant or denial of a motion for summary judgment, "'this Court

applies a *de novo* standard of review.'" *Gibson v. Williams & Montgomery, P.A.*, 186 So. 3d 836, 844 (Miss. 2016) (quoting *Burleson v. Lathem*, 968 So. 2d 930, 932 (Miss. 2007)). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "Further, this Court views the evidence in the light most favorable to the nonmoving party." *Gibson*, 186 So. 3d at 844 (citing *Duckworth v. Warren*, 10 So. 3d 433, 436 (Miss. 2009)). "'[T]he moving party has the burden of demonstrating that [no] genuine issue of material fact[] exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.'" *Gibson*, 186 So. 3d at 844 (quoting *One South, Inc. v. Hollowell*, 963 So. 2d 1156, 1160 (Miss. 2007)).

¶33.    In *Copiah County v. Oliver*, 51 So. 3d 205, 206 (Miss. 2011), "Copiah County filed a motion for summary judgment, asserting that Oliver should be judicially estopped from pursuing her personal-injury claim because she had never amended her bankruptcy schedule of assets to reflect the existence of her claim against the county." The majority in the present case, quoting the dissenting opinion from the Mississippi Court of Appeals, observed that the *Oliver* Court "'did not review the merits of the trial court's application of the doctrine of judicial estoppel.'" Maj. Op. ¶ 10 (quoting *Adams v. Graceland Care Ctr. of Oxford, LLC*, 2015 WL 6685213, at *7 (Miss. Ct. App. Nov. 3, 2015) (Wilson, J., dissenting)). Indeed, the *Oliver* Court affirmed the denial of summary judgment because the United States Bankruptcy Court for the Southern District of Mississippi had not yet determined whether Oliver had a

16

duty to disclose her personal injury claim to the bankruptcy court. *Oliver*, 51 So. 3d at 205, 207.

¶34.    In *Gibson v. Williams, Williams & Montgomery, P.A.*, 186 So. 3d 836, 844 (Miss. 2016), this Court applied a *de novo* standard of review to the trial court's grant of summary judgment to the defendants, based—in part—on judicial estoppel. In that case, this Court considered whether judicial estoppel applied to bar Bobby Gibson, a surviving husband who "had signed and joined . . . . various petitions filed throughout the estate proceedings," from bringing a legal malpractice claim against the attorneys who handled the estate. *Id.* at 846-47. This Court noted the three elements which must "be met for judicial estoppel to apply: (1) the position must be clearly inconsistent with one taken during previous litigation; (2) the court must have accepted and relied on the previous position; and (3) the party must not have inadvertently taken the inconsistent position." *Id.* at 846 (citing *Kirk*, 973 So. 2d at 991).

¶35.    This Court held that judicial estoppel did not preclude Gibson's legal malpractice action:

> [J]udicial estoppel applies only when the inconsistent position was not taken inadvertently. If [Gibson's] assertions prove to be true, and his claims later prove to be meritorious, then he signed the petitions either because he had received bad advice from his attorney, or because his attorney had breached a fiduciary duty to him by failing to fully inform him of the implications of signing the petitions.

*Gibson*, 186 So. 3d at 847. The Court continued: "[b]ased on [Gibson's] allegations—which we must accept as true for purposes of summary judgment—we hold that, at the very least, [Gibson] *inadvertently* took these inconsistent positions, thus precluding judicial estoppel." *Id.* (emphasis in original). After conducting a *de novo* review, this Court reversed the trial

17

court's grant of summary judgment to the defendants and remanded the case to the trial court. *Id.* at 840, 853.

¶36.    This Court in *Gibson* applied a *de novo* standard of review in considering whether to apply judicial estoppel to Gibson's legal malpractice claims. I respectfully disagree that the Court of Appeals plurality erred in its application of that standard to the present case. The defendants elected to raise judicial estoppel through a motion for summary judgment. Therefore, they are bound on appeal by the standard of review applicable to that procedural mechanism.

¶37.    I also agree with the Court of Appeals' plurality that the defendants failed to demonstrate that no genuine issue of material fact exists regarding whether Adams took the position in the suit inadvertently:[6] "[W]e cannot say that the evidence shows that Adams knowingly took inconsistent positions in the trial court and bankruptcy court." *Adams*, 2015 WL 6685213, at *6. It is true that Adams is her mother's survivor and only heir and therefore the beneficiary of the present lawsuit. And it is true, as the majority points out, that "'[t]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court'" and that "'[m]otivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.'" *Love v. Tyson Foods, Inc.*, 677 F. 3d 258, 262 (5th Cir. 2012) (internal citations omitted). Further, a motivation to conceal can be shown if the plaintiff "stood to 'reap a windfall had [plaintiff] been able to

---

[6] The United States Court of Appeals for the Fifth Circuit has held that a district court's grant of summary judgment is reversible "if we find that there is a genuine factual dispute regarding whether [plaintiff] failed to disclose his claims inadvertently." *Love v. Tyson Foods, Inc.*, 677 F. 3d 258, 262 (5th Cir. 2012) (citing F.R.C.P. 56(a)).

18

recover on the undisclosed claim without having disclosed it to the creditors.'" ***Id.*** (quoting ***Superior Crewboats, Inc.***, 374 F.3d at 336). Nevertheless, even if a motive for concealment can be shown by the defendant, the Fifth Circuit has recognized that such showing is rebuttable by the plaintiff: "After [defendant] set out this motivation to conceal, it fell to [plaintiff] to show that the omission of his claims from his schedule of assets was inadvertent." ***Love***, 677 F. 3d at 262.

¶38.     Here, in response to the motion for summary judgment, Adams filed an affidavit in which she stated that "[i]n December, 2007, when my mother died, and in the months after, I did not even think about adding the lawsuit I filed for the terrible treatment she received from the Nursing Homes she stayed in. I had no idea that I was supposed to change my bankruptcy to show the lawsuit." Further, Adams stated that "[a]s soon as I knew I was supposed to add the suit, I asked Mr. Guernsey at Thomas Reynolds' office to do what he needed to do to make that happen" and that her "lawyer, Mr. Skouteris, did most of the talking to Mr. Guernsey." She stated that "[i]n the Bankruptcy Court, I always answered every question honestly and told the truth to Mr. Reynolds and his staff members who prepared the papers." She stated that she "never tried to hide anything and . . . . never told a lie" and that "[t]he last time I had anything to do with the Bankruptcy, except to pay into the Trustee was in 2005, before I even knew my mother was getting poor treatment from Graceland."

¶39.     Stewart Guernsey stated in his affidavit attached to Adams's response to the motion for summary judgment that, on October 13, 2009, he filed Adams's "Motion to Re-Open to

19

add an additional asset, an unliquidated cause of action which had matured in late 2007 or early 2008" and that the motion had been granted on October 16, 2009. Guernsey then amended "schedules B and C[] to include the unlisted asset." Guernsey, who interviewed Adams, stated that he "was convinced and remain so, that Ms. Adams was an 'unsophisticated consumer' who failed to list her lawsuit as a result of inadvertence only." According to Guernsey, Adams had "indicated during our conversation that she had no idea that she should list a lawsuit that she filed four years after filing her bankruptcy."

¶40.    At her deposition, Adams was candid that she had not listed the lawsuit as an asset on her bankruptcy schedule of assets. She responded "[n]o" when asked whether she remembered, "as part of any of your bankruptcy proceedings, being asked whether or not you had any pending lawsuits[]."

¶41.    The trial court found that, "based on Plaintiff's own affidavit and deposition testimony, [Adams] had knowledge of the facts supporting her cause of action prior to the discharge of her Chapter 13 proceeding." But the defendants had filed a motion for summary judgment. Instead of determining whether a genuine issue of material fact existed as to whether Adams had taken inconsistent positions knowingly, the trial court resolved the ultimate disputed fact question. But the existence of a genuine issue of material fact requires that the trial court deny the defendant's motion for summary judgment. The majority's finding that the trial court's factual determination is supported by the evidence perpetuates the trial court's erroneous resolution of the fact question.

20

¶42.    Judicial estoppel is analogous to a statute of limitations affirmative defense, which often is raised through a motion for summary judgment. This Court has recognized that "[c]onsistent with the Mississippi Rules of Civil Procedure, we are of the opinion that the question of the running of the statute of limitations to bar an action may also be the subject of a summary judgment if there exists no genuine issues of material fact concerning the question." *Smith v. Sanders*, 485 So. 2d 1051, 1053 (Miss. 1986). However, "[o]ccasionally the question of whether the suit is barred by the statute of limitations is a question of fact for the jury; . . . as with other putative fact questions, the question may be taken away from the jury if reasonable minds could not differ as to the conclusion." *Id. See also Ridgway Lane & Assocs., Inc. v. Watson*, 189 So. 3d 626 (Miss. 2016); *Lyas v. Forrest Gen. Hosp.*, 177 So. 3d 412 (Miss. 2015); *Holaday v. Moore*, 169 So. 3d 847 (Miss. 2015); *Crawford v. Custom Sign Co.*, 138 So. 3d 894 (Miss. 2014); *Honeycutt v. Coleman*, 120 So. 3d 358 (Miss. 2013).  No appreciable difference exists in the applicability of a statute of limitations affirmative defense and a judicial estoppel affirmative defense in the context of a motion for summary judgment.

¶43.    Viewing these facts in the light most favorable to Adams, as we must do in reviewing a motion for summary judgment on appeal, I would hold that a genuine factual dispute exists regarding whether Adams's positions in the bankruptcy court and in the trial court were inadvertently contrary. *See Love*, 677 F.3d at 262.

    **DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.**